**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **Robert Updegrove**; and **Loudoun Multi-Images LLC** d/b/a **Bob Updegrove Photography**, | |
| Plaintiffs, | Case No.1:20-cv-01141-CMH-JFA |
| v. | **Reply Brief in Support of Plaintiffs' Preliminary Injunction Motion** |
| **Mark R. Herring**, in his official capacity as Virginia Attorney General; and **R. Thomas Payne, II**, in his official capacity as Director of Virginia Division of Human Rights and Fair Housing, | |
| Defendants. | |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... ii

Introduction ........................................................................................ 1

Argument .......................................................................................... 2

I.     The Accommodations Clause compels Bob's speech. ................................................ 2

     A.     The Accommodations Clause compels Bob's speech, not his conduct. ................. 2

     B.     The Accommodations Clause forces Bob to speak messages to which he objects. 7

     C.     Bob seeks the narrow right to decline to speak based on message, not status...... 10

II.     The Accommodations Clause compels speech based on content and viewpoint. ............ 12

III.     The Publication Clause restricts speech based on content and viewpoint. ...................... 13

IV.     The Accommodations Clause compels Bob to participate in religious ceremonies and regulates a hybrid of constitutional rights......................................................................... 15

V.     The Accommodations and Publication Clauses fail strict scrutiny. ................................. 17

VI.     The remaining preliminary injunction factors favor granting relief. ............................... 20

Conclusion ...................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**

*Boy Scouts of America v. Dale,*
530 U.S. 640 (2000) .................................................................................................3, 4

*Bolger v. Youngs Drug Productions Corp,*
463 U.S. 60 (1983) ........................................................................................................14

*Bigelow v. Virginia,*
421 U.S. 809 (1975) ......................................................................................................14

*Billups v. City of Charleston,*
No. 19-1044, 2020 WL 3088108 (4th Cir. June 11, 2020) ...........................................3, 6, 19

*Brown v. Entertainment Merchant Association,*
564 U.S. 786 (2011) ...................................................................................................17, 18

*Brush & Nib Studio, LC v. City of Phoenix (B&N),*
448 P.3d 890 (Ariz. 2019) .............................................................................3, 5, 7, 11, 14

*Campbell v. Robb,*
162 F. App'x 460 (6th Cir. 2006) .............................................................................14

*Chelsey Nelson Photography LLC v. Louisville/Jefferson County Government,*
No. 19-CV-851 JRW, 2020 WL 4745771 (W.D. Ky. August 14, 2020)............3,6, 10, 17, 20

*Church of the Lukumi Babulu Aye, Inc. v. City of Hialeah,*
508 U.S. 520 (1993) ......................................................................................................18

*Elane Photography LLC v. Willock,*
309 P.3d 53 (N.M. 2013)...............................................................................................6, 7

*Elrod v. Burns,*
427 U.S. 347 (1976) ........................................................................................................2

*Employment Division, Department of Human Resources of Oregon v. Smith,*
494 U.S. 872 (1990) ......................................................................................................15

*Entertainment Software Association v. Blagojevich,*
469 F.3d 641 (7th Cir. 2006)........................................................................................6

*Fields v. City of Tulsa,*
753 F.3d 1000 (10th Cir. 2014).....................................................................................16

*Giboney v. Empire Storage & Ice Company,*
336 U.S. 490 (1949) .......................................................................................................5

*Goulart v. Meadows,*
345 F.3d 239 (4th Cir. 2003).........................................................................................9

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal,*
546 U.S. 418 (2006) ......................................................................................................20

*Greater Baltimore Center for Pregnancy Concerns, Inc. v. Mayor & City
   Council of Baltimore*,
   879 F.3d 101 (4th Cir. 2018), *cert. denied*, 138 S. Ct. 2710 (2018)......................................19

*Harris v. Quinn*,
   573 U.S. 616 (2014) ..........................................................................................................14

*Hishon v. King & Spalding*,
   467 U.S. 69 (1984) ..............................................................................................................5

*Holder v. Humanitarian Law Project*,
   561 U.S. 1 (2010) ................................................................................................................3

*Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston*,
   515 U.S. 557 (1995) ................................................................................................. *passim*

*Imagine Medispa, LLC v. Transformations, Inc*.,
   999 F. Supp. 2d 862 (S.D.W. Va. 2014) .............................................................................2

*Janus v. American Federation of State, County, & Municipal Employees, Council 31*,
   138 S. Ct. 2448 (2018) ......................................................................................................19

*Kaahumanu v. Hawaii*,
   682 F.3d 789 (9th Cir. 2012) ..............................................................................................9

*Lee v. Weisman*,
   505 U.S. 577 (1992) ..........................................................................................................15

*Legend Night Club v. Miller*,
   637 F.3d 291 (4th Cir. 2011) ............................................................................................20

*Marrero-Mendez v. Calixto-Rodriguez*,
   830 F.3d 38 (1st Cir. 2016) ...............................................................................................16

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
   138 S. Ct. 1719 (2018) ..................................................................................5, 10, 15, 16, 18

*Matal v. Tam*,
   137 S. Ct. 1744 (2017) ......................................................................................................15

*McDermott v. Ampersand Publishing, LLC*,
   593 F.3d 953 (9th Cir. 2010) ..............................................................................................6

*Melvin v. U.S.A. Today*,
   No. 3:14-CV-00439, 2015 WL 251590 (E.D. Va. Jan. 20, 2015)..........................................4

*Miami Herald Publishing Company v. Tornillo*,
   418 U.S. 241 (1974) ............................................................................................................8

*NAACP v. Button*,
   371 U.S. 415 (1963) ............................................................................................................1

*National Inst. of Family & Life Advocates v. Becerra*,
   138 S. Ct. 2361 (2018) .....................................................................................................6, 8

*Newman v. Piggie Park Enterprises, Inc.,*
  390 U.S. 400 (1968) ..................................................................................5

*Obergefell v. Hodges,*
  576 U.S. 644 (2015) ................................................................................12

*Pacific Gas & Electric Company v. Public Utilities Commission of California,*
  475 U.S. 1 (1986) .....................................................................................4

*Pittsburg Press Company v. Pittsburgh Commission on Human Relations,*
  413 U.S. 379 (1973) ................................................................................14

*R.A.V. v. City of St. Paul, Minnesota,*
  505 U.S. 377 (1992) ................................................................................15

*Reed v. Town of Gilbert,*
  576 U.S. 155 (2015) ...........................................................................13, 17

*Reynolds v. Middleton,*
  779.3d 222 (4th Cir. 2015) .................................................................17, 19

*Riley v. National Federation of the Blind of North Carolina, Inc.,*
  487 U.S. 781 (1988) ................................................................................14

*Roberts v. United States Jaycees,*
  468 U.S. 609 (1988) ................................................................................13

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.,*
  547 U.S. 47 (2006) .........................................................................4, 5, 7, 8

*Telescope Media Group v. Lucero,*
  926 F.3d 740 (8th Cir. 2019) ............................................................ *passim*

*Thompson v. Western States Medical Center,*
  535 U.S. 357 (2002) ................................................................................19

*United States v. Playboy Entertainment Group, Inc.,*
  529 U.S. 803 (2000) ...........................................................................17, 20

*United States v. Williams,*
  533 U.S. 285 (2008) ................................................................................14

*Wandering Dago, Inc. v. Destito,*
  879 F.3d 20 (2d Cir. 2018) ......................................................................15

*Washington v. Arlene's Flowers, Inc.,*
  441 P.3d 1203 (2019) ................................................................................5

*Washington State Grange v. Washington State Republican Party,*
  552 U.S. 442, 457 n.10 (2008) ...................................................................7

*Washington Post v. McManus,*
  944 F.3d 506 (4th Cir. 2019) .....................................................................6

*West Virginia State Board of Education v. Barnette,*
  319 U.S. 624 (1934) ...........................................................................2, 16

*Wisconsin v. Mitchell*,
   508 U.S. 476 ..........................................................................................................4

*Wooley v. Maynard*,
   430 U.S. 705 (1977) ..........................................................................................8, 16

*Zhang v. Baidu.com Inc.*,
   10 F. Supp. 3d 433 (S.D.N.Y. 2014) ..................................................................4

## Statutes

Va. Code § 2.2-3902 .....................................................................................................18

Va. Code § 2.2-3904(C)................................................................................................18

## Other Authorities

Heritage Reporting Corporation, Transcript of Oral Argument, Ltd., et., Al v. Colorado Civil
   Rights Commission (December 2017),
   https://www.supremecourt.gov/oral_arguments/argument_transcripts/2017/16-
   111_f314.pdf ...................................................................................................16

**Introduction**

Bob Updegrove wants to choose the content of his speech and the ceremonies he celebrates. The First Amendment guarantees no less. Yet Virginia says it can compel Bob to take and post photographs celebrating same-sex marriage. Virginia grounds this argument on a series of false premises: paid photography is conduct, not speech; paid speakers speak for their clients, not themselves; and wedding photographs convey personal messages, not moral, religious, or political ones. But precedent and logic disagree. Virginia's theories would allow it to use anti-discrimination laws to compel *any* paid speaker to speak *any* message whatsoever—from forcing LGBT artists to design websites condemning same-sex marriage to forcing Jewish artists to write banners honoring Ramadan. This Court should reject these theories and affirm speakers' editorial freedom, starting with Bob.

This result does not hinder Virginia's fighting invidious discrimination either. Virginia can still do so without compelling Bob's speech. Like a Muslim artist who serves clients of diverse faiths but cannot paint murals saying "Jesus, Son of God" for anyone, Bob serves clients of different orientations but cannot create certain content for anyone. Virginia's law can still "promote all sorts of *conduct* in place of harmful behavior," it just cannot "interfere with *speech* for no better reason than promoting an approved message or discouraging a disfavored one." *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*, 515 U.S. 557, 579 (1995) (emphasis added).

In its quest to regulate Bob, Virginia ends up playing a shell game with fundamental freedoms, labeling Bob's speech as conduct and attributing it to others. But "[s]peech is not conduct just because the government says it is." *Telescope Media Grp. v. Lucero* (*TMG*), 936 F.3d 740, 752 (8th Cir. 2019). And Virginia "cannot foreclose the exercise of constitutional rights by mere labels." *NAACP v. Button*, 371 U.S. 415, 429 (1963). Federal courts have

*unanimously* held that public accommodation laws cannot force paid speakers to create speech celebrating weddings against their beliefs. This Court should do so too.

## <u>Argument</u>

## I.     The Accommodations Clause compels Bob's speech.[1]

Virginia does not dispute the three-part test for identifying compelled speech. Pls.' Br. in Supp. of Prelim. Inj. Mot. ("MPI") 9, ECF No. 6, or any of Bob's facts. These facts should therefore "be accepted as true." *Imagine Medispa, LLC v. Transformations, Inc.*, 999 F. Supp. 2d 862, 869 (S.D.W. Va. 2014) (citing *Elrod v. Burns*, 427 U.S. 347, 350 n.1 (1976)).

Virginia also does not contest that Bob's photography constitutes speech, Defs.' Combined Opp. to Prelim. Inj. and Mem. in Supp. of Mot. to Dismiss ("MTD") 16, ECF Nos. 20, 22, or that Virginia's law compels Bob to create and post photographs celebrating same-sex weddings, *id.* at 12–14. The only dispute is whether this result forces Bob to speak a message he disagrees with. It does.

### A.     The Accommodations Clause compels Bob's speech, not his conduct.

Bob's claim is straightforward: his photography is speech, the law forces him to create and post speech he disagrees with, and the government cannot compel him to do this—"to utter what is not in his mind." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 634 (1943).

In response, Virginia says its law regulates conduct and creates only an "incidental" burden on Bob's speech. MTD 12–14. But Virginia and amici[2] confuse facial and as-applied challenges. While Virginia's Accommodation Clause may "not [facially] dictate the images

---

[1] This brief uses the same abbreviations and defined terms as Pls.' Br. in Supp. of Prelim. Inj. Mot. ("MPI") 9, ECF No. 6. *See also* Br. in Resp. to Defs.' Mot. to Dismiss 1 n.1.

[2] This brief also responds to amici curiae. *See* Br. Am. Civil Liberties Union and Am. Civil Liberties Union of Va. as Amici Curiae Opposing Pls.' Mot. for Prelim. Inj. ("ACLU"), ECF No. 24-2; Br. of Religious and Civil-Rights Orgs. as Amici Curiae in Opp. to Pls.' Mot. for Prelim. Inj. and in Supp. of  Defs.' Mot. to Dismiss ("AU"), ECF No. 29-1.

plaintiff creates or displays" (MTD 14; *see also* ACLU 7), it does exactly this when applied to Bob's photography—forcing him to create and post images he otherwise would not, and with which he disagrees. MPI 11–15. This parallels the law in *Hurley*, which did not facially dictate which banners the parade had to display but did in application. MPI 14. *See also Boy Scouts of Am. v. Dale*, 530 U.S. 640, 658–59 (2000) (public accommodations law regulated expressive activity as applied). Applying this logic, many courts have rejected Virginia's argument and held that public accommodation laws regulate speech when they force paid artists to create speech celebrating same-sex weddings. *TMG*, 936 F.3d at 756–58; *Chelsey Nelson Photography LLC v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-CV-851-JRW, 2020 WL 4745771, at *10 (W.D. Ky. Aug. 14, 2020); *Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 913–14 (Ariz. 2019). Virginia and amici don't distinguish any of these cases.

The Fourth Circuit agrees with the logic of these cases though. Echoing Virginia, the city of Charleston, South Carolina, argued in *Billups v. City of Charleston* that its law banning unlicensed tour guides was "a business regulation governing conduct that merely imposes an incidental burden on speech" because it "merely regulate[d] the commercial transaction of selling tour guide services." 961 F.3d 673, 682–83 (4th Cir. 2020). But the Fourth Circuit looked past those labels and applied First Amendment scrutiny because giving guided tours was "an activity which, by its very nature, depends upon speech or expressive conduct." *Id*. at 683. *See also Holder v. Humanitarian Law Project*, 561 U.S. 1, 28 (2010) (law "directed at conduct" triggered scrutiny as applied because "the conduct triggering coverage under the statute consists of communicating a message").

Photography is also expressive by its very nature, as Virginia concedes. MTD 14. So when Virginia applies its law to Bob's photography to force him to create and post photographs

he disagrees with, the law necessarily "appli[es] to expressive activity" and "violates the fundamental rule of [First Amendment] protection"—that speakers have the "autonomy to choose the content of [their] own message." *Hurley*, 515 U.S. at 573, 578. Violating this fundamental rule imposes a "direct[]" and "immediate[]" burden, not an incidental one. *Dale*, 530 U.S. at 661 (rejecting incidental argument); *TMG*, 936 F.3d at 756–57 (same).

The same principle explains why anti-discrimination laws cannot compel newspapers to publish editorials, internet companies to publish online content, or television studios to cast actors. MPI 13–14. Virginia has no response. Amici say these situations either involved compulsions of specific information or did not involve public accommodations at all. ACLU 10 n.3; 11 n.4. But Virginia and amici are in error. *See Zhang v. Baidu.com Inc.*, 10 F. Supp. 3d 433, 437 (S.D.N.Y. 2014) (public accommodation law could not compel business' speech); *Melvin v. U.S.A. Today*, No. 3:14-CV-00439, 2015 WL 251590, at *9 (E.D. Va. Jan. 20, 2015) (dismissing claims brought under federal anti-discrimination law to compel newspaper to publish specific content, even though law did not *facially* compel any specific message).

And these distinctions do not matter. Public accommodations laws do not materially differ from other non-discrimination laws. Public accommodations have First Amendment rights too, as *Hurley* and *Dale* prove. *See also Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.* (*PG&E*), 475 U.S. 1, 8 (1986) ("The identity of the speaker is not decisive in determining whether speech is protected."). The government cannot force someone to "speak the government's [chosen] message" or messages chosen by others. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.* (*FAIR*), 547 U.S. 47, 63 (2006).

None of the other cases Virginia or amici cite help their cause either. Most of these cases did not involve speech at all. MTD 13–14 (citing *Wisconsin v. Mitchell*, 508 U.S. 476 (1993));

ACLU 2 (*Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968)). The others did not involve compelled speech claims. MTD 13–14; ACLU 2, 6–7 (citing, *e.g.*, *Hishon v. King & Spalding*, 467 U.S. 69 (1984) and *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)). Unlike the application of the Virginia law here, these laws did not alter any speaker's message or expressive content. *See TMG*, 936 F.3d at 756 (distinguishing *Hishon*); *B&N*, 448 P.3d at 916 (distinguishing *Piggie Park*).[3]

The same holds true with *FAIR*, which did not insulate all equal-access rules. *Contra* MTD 13–14. *FAIR* merely considered a policy forcing law schools to open their empty rooms to military recruiters. But empty rooms (unlike photographs) don't say anything. So the policy didn't compel access to anything "inherently expressive" and "d[id] not affect the law schools' speech." 547 U.S. at 64. *Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm.*, 138 S. Ct. 1719, 1745 (2018) (Thomas, J., concurring); *TMG*, 936 F.3d at 758 (making same point).

To be sure, *FAIR* did require schools to send some logistical emails. 547 U.S. at 61–62; ACLU 12. But those emails were incidental to hosting, i.e., speech necessary to facilitate some other conduct the government could require. *FAIR*, 547 U.S. at 62. Virginia's law directly regulates the content of speech when applied to Bob's photography—forcing Bob to personally communicate messages he disagrees with. *TMG*, 936 F.3d at 758 (explaining this principle while distinguishing *FAIR*); *B&N*, 448 P.3d at 909 (same).

Nor is Bob's speech/conduct distinction some "unworkable standard" as amici suggest. ACLU 11. "While drawing the line between speech and conduct can be difficult, this Court's

---

[3] While *Washington v. Arlene's Flowers, Inc.*, required a florist to create custom floral arrangements for same-sex weddings, it explicitly distinguished floral arrangements from pure speech like tattoos and other "realistic … images." 441 P.3d 1203, 1227 n.19 (2019) (cleaned-up). Bob's photography fits this latter category. Moreover, *Arlene's Flowers* was wrongly decided.

precedents have long drawn it, and the line is long familiar to the bar." *Nat'l Inst. of Family & Life Advocates v. Becerra* (*NIFLA*), 138 S. Ct. 2361, 2373 (2018) (cleaned-up). And of course, no line-drawing problem exists here. It is well accepted that photography deserves protection. *See Chelsey Nelson*, 2020 WL 4745771 at *9 (distinguishing cases that "required difficult line drawing …. because the First Amendment 'unquestionably' protects" photography (citing *Hurley*, 515 U.S. at 569)).

Unable to hide behind the law's text or purpose, Virginia and amici resort to saying that photography loses protection when done "in the business of earning money" (MTD 16). But this "profit-based distinction is quite beside the point." *Billups*, 961 F.3d at 683; *see also* MPI 11. If "the business of leading tours" receives protection because it "depends on the expression of ideas," *Billups*, 961 F.3d at 684, so too does the business of photography.

This point also undermines any effort to limit *Hurley* to non-profits. MTD 17; ACLU 10–11. *Hurley* never drew any commercial/non-commercial distinction and even rejected it. 515 U.S. at 574 (extending compelled-speech protection to "business corporations generally," including "professional publishers"). That is why four circuit courts (including the Fourth) have applied *Hurley* to protect businesses from compelled speech. *TMG*, 936 F.3d at 752, 758 (film studio); *Washington Post v. McManus*, 944 F.3d 506, 518 (4th Cir. 2019) (newspaper); *McDermott v. Ampersand Publ'g, LLC*, 593 F.3d 950, 962 (9th Cir. 2010) (newspaper); *Entm't Software Ass'n v. Blagojevich*, 469 F.3d 641, 653 (7th Cir. 2006) (video-game company).

That leaves only *Elane Photography, LLC v. Willock*, 309 P.3d 53 (N.M. 2013)—the sole case on point in Virginia's favor. But like Virginia, *Elane* overlooks how the First Amendment protects paid speech and how public accommodation laws can compel speech as-applied. *Id.* at 68 (finding that law could compel photographs because it "applies not to Elane

Photography's photographs but to its business operation"). *Elane* contradicts all the cases cited above (binding and persuasive) and would allow officials to compel paid speakers to speak any message the officials chose. *B&N*, 448 P.3d at 916–17 (distinguishing *Elane*). This Court should reject this approach, which would make "wide swaths of protected speech … subject to regulation," *TMG,* 963 F.3d at 752, and would allow Virginia to compel the speech of "lawyers, graphic designers, and advertisers engaged in commerce" as wells as Bob. MTD 17 n.12. *See also* MPI 19 (citing other examples that Virginia's theory would compel).

## B. The Accommodations Clause forces Bob to speak messages to which he objects.

Bob believes that he must steward his creative gifts to honor God in everything that he does. Compl. ¶¶ 32–36. And although Bob creates wedding photography to promote Biblical marriage as he understands it, Virginia forces him to promote a message that would violate his deeply held beliefs. *Id.* ¶¶ 106–07.

Faced with this brazen violation of Bob's conscience, Virginia justifies compelling Bob's speech by attributing it to his clients because "*it is the couple and their guests* who are celebrating, not the photographer." MTD 15. As support, Virginia again invokes *FAIR*, which found that no one would associate law schools with the speech of recruiters they hosted. *Id*.

But *FAIR* discussed perception and association *only after* deciding that "the schools are not speaking when they host interviews and recruiting receptions." 547 U.S. at 64. That association discussion concerned someone required to open their *non-expressive* property for someone else to speak. *Id*. at 65 (citing cases where law compelled access to rooms, not speech). This language did not address Bob's situation: when someone is forced to create speech or to open their expressive medium to speech they oppose. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 457 n.10 (2008) (distinguishing law in *FAIR* that

required "[f]acilitation of speech" from law requiring someone "to reproduce another's speech against their will" or "co-opt[ing] the parties' own conduits for speech"). *FAIR* merely held that perceived association of a message with a specific speaker is sufficient, not necessary for compelled speech.

We know that because courts frequently find compelled speech without associating speaker and message. No one thinks pro-life pregnancy centers endorse government-mandated notices about abortion; that a newspaper endorses editorials published under someone else's name; or that drivers endorse a state motto displayed on every license plate. But the Supreme Court found compelled speech in these scenarios anyway. *NIFLA*, 138 S. Ct. at 2371; *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256–58 (1974); *Wooley v. Maynard*, 430 U.S. 705, 714–15 (1977). *See also PG&E*, 475 U.S. at 15 n.11 (finding that a law would compel speech even if disclaimer "avoid[ed] giving readers the mistaken impression that TURN's words are really those of appellant").

These cases must be correct. Otherwise, Virginia could force someone to ghostwrite Donald Trump's or Joe Biden's autobiography. MPI 14–15 (citing other examples of paid speakers who convey messages they may not be associated with). But that is not how the compelled-speech doctrine works. "[T]he First Amendment is relevant whenever the government compels speech, regardless of who writes the script." *TMG*, 936 F.3d at 753. And the government can't invade speaker's rights whether third parties know it is happening or not.

Of course, Virginia's association argument ignores the uncontroverted facts about how Bob communicates through his photographs. Bob creates the photographs, not his clients; Bob retains editorial control over his photography, not his clients (Compl. ¶¶ 50, 90); Bob displays the photographs to the public on his website with his name (Compl. ¶¶ 72–85); and Bob posts

the photographs on his website's galleries to show the bride and groom's family and friends (Compl. ¶¶ 73, 79, 82–83). So people would associate Bob with his photographs.

Finally, Virginia cannot discount Bob's photography as commissioned for his clients' "personal use," not conveying Bob's "own message," and not addressing the "politics of same-sex marriage." MTD 16-17 (contrasting the parade in *Hurley*, which occurred before many "watchers"). The record says otherwise, highlighting Bob's desire and editorial discretion to publicly promote counter-cultural messages about marriage to clients and on the internet. *See* Compl. ¶¶ 37, 44, 49–52, 92–98.

And Virginia cites nothing to support these distinctions. In reality, the First Amendment protects speech whether its audience is large or small; its purpose is personal or public; or its subject is political or interpersonal. *See Goulart v. Meadows*, 345 F.3d 239, 248 (4th Cir. 2003) ("Even dry information, devoid of advocacy, political relevance, or artistic expression, has been accorded First Amendment protection." (citation omitted)); *Kaahumanu v. Hawaii*, 682 F.3d 789, 798–99 (9th Cir. 2012) (rejecting argument that weddings do not deserve First Amendment protection "because they are 'personal, private, and non-political communication'").

*Hurley* agrees. It extended protection to "ordinary people engaged in unsophisticated expression" and "not only to expressions of value, opinion, or endorsement, but equally to statements of fact the speaker would rather avoid." 515 U.S. at 573–74. Indeed, *Hurley* allowed the parade organizers to decline a sign that merely said "Irish American Gay, Lesbian and Bisexual Group of Boston," *id.* at 570, not "support marriage equality."

Virginia creates a false dichotomy. Speech can have both a personal and public purpose, both a personal and political subject. Same-sex wedding photographs illustrate this. They can communicate messages about a couple, but also about the concept of marriage and what

9

marriages should be celebrated. That is enough to trigger protection. *Masterpiece*, 138 S. Ct. at 1743–44 (Thomas, J. concurring) (finding government cannot force a cake designer to communicate a message "that same-sex weddings are 'weddings' and … that they should be celebrated"); *TMG*, 936 F.3d at 753 (law required videographers to "convey 'positive' messages about same-sex weddings"); *B&N*, 448 P.3d at 912 ("there is no legal justification for holding that free speech only protects messages that 'endorse' or 'support' same-sex weddings but not messages celebrating such weddings"); *Chelsey Nelson*, 2020 WL 4745771 at *10 (protecting a wedding photographer even though her "photographs might mean different things to different people").

### C. Bob seeks the narrow right to decline to speak based on message, not status.

Unlike Virginia's asserted authority to broadly regulate speech, Bob only seeks the narrow right to "choose the content of his own message." *Hurley*, 515 U.S. at 573. Bob has "never declined to serve anyone because of who they are." Compl. 1.

*Hurley* accepted this message/status distinction. MPI 18. But Virginia rejects it, saying Bob cannot justify his content objection without "otherwise discriminat[ing] against the LGBTQ community." MTD at 25 n.17. *Accord* ACLU 4–5. That misses the point. Bob *never* discriminates based on status, inside or outside the wedding context. For example, if a gay wedding planner asked Bob to photograph someone's opposite-sex wedding, Bob would do so. And if a lesbian, bisexual, or pansexual woman asked Bob to photograph her wedding to a man, Bob would serve her. *See* Decl. ¶¶ 300–301. But Bob "cannot create certain content for anyone, no matter who they are." Compl. 1. So if a heterosexual couple asked Bob to photograph their son's same-sex wedding, he would decline. And if a Christian business owner asked Bob to photograph an Exorcist-themed wedding shoot, Bob would decline this too. *See* Decl. ¶¶ 284– 96.

As these examples show, Bob's editorial choices do not serve as a proxy for status discrimination or turn on "the identity of the couple being served." ACLU 5. Bob consistently serves all his customers on an equal basis and turns no one away because of their status. He only considers whether the *photographs themselves* violate his beliefs, just like the parade organizers in *Hurley* who did not "exclude homosexuals as such" but declined to convey a view "that people of their sexual orientations have as much claim to unqualified social acceptance as heterosexuals." 515 U.S. at 572, 574.

This distinction also explains why Bob is not like restaurants offering only appetizers, but not entrees, to women. ACLU 4. Unlike appetizers and entrees, photographs speak. And they speak different messages depending on their content. *Cf.* AU 10 n.3 (citing cases distinguishing conduct and status, not message and status).

Amici ignore that all of Bob's wedding services portray the depicted marriages in positive, uplifting ways. Compl. ¶¶ 55, 70, 92, 107; Decl. ¶¶ 205–06. So changing the wedding content in these photographs necessarily changes their message. *TMG*, 936 F.3d at 753. Amici's "flawed assumption" is that Bob's photographs "are fungible products, like a hamburger or a pair of shoes. They are not." *B&N*, 448 P.3d at 910. Bob does "not sell 'identical' [photographs] to anyone; every custom [creation] is different and unique." *Id.* And Bob offers the same positive messages about opposite-sex marriage to everyone and declines the same messages to everyone. That's not discriminatory treatment; it's equal treatment. Virginia instead demands Bob give special treatment—that he speak messages he otherwise would not speak for anyone.

Unlike Virginia, amici do not completely reject Bob's message/status distinction. They just apply it selectively, saying progressive groups can decline to publish pro-Israeli statements so long as they "would not publish such messages" for anyone ACLU 5 n.1. But that is exactly

what Bob does. He won't create certain photography for anyone, no matter their identity. Amici never explain the difference, because none exists.

With this line of reasoning in mind, protecting Bob would not lead to the hypotheticals amici fear, such as businesses turning away "women, Muslims, [and] Black people" (ACLU 2) or denying "service to a Muslim woman who wears a hijab." AU 20. These hypotheticals involve per-se refusals to serve entire groups of persons based on who those people are, while Bob serves everyone. Decl. ¶¶ 297–301. Amici's other hypotheticals do not even involve speech, such as someone refusing to "sell fruit to an unmarried pregnant woman," AU at 20.

In the end, Virginia and amici try to paint Bob's beliefs as indistinguishable from discriminatory attitudes toward LGBT individuals. AU 10 n.3. But a belief that marriage is between one man and one woman has "long … been held—and continues to be held—in good faith by reasonable and sincere people here and throughout the world." *Obergefell v. Hodges*, 576 U.S. 644, 657 (2015). People like Bob who hold such beliefs happily offer their services to anyone, LGBT or not. This Court should reject the other side's conflation of status and message, and grant Bob the same freedom that every other speaker enjoys.

## II. The Accommodations Clause compels speech based on content and viewpoint.

The Accommodations Clause is a content-based regulation because it changes the content of Bob's speech, is triggered by what he says elsewhere, and requires access only to certain viewpoints. MPI at 20–21. In response, Virginia rehashes its prior argument that its law facially regulates conduct. MTD 17–21. Bob has refuted this. *See supra*, § I.A.

*Roberts v. United States Jaycees* doesn't change the analysis. 468 U.S. 609 (1984). There, the Supreme Court simply found that the Minnesota Human Rights Act, the same act at issue in *TMG*, was *facially* content-neutral. *Id.* at 623. Bob doesn't dispute this and neither did the Eighth Circuit. It still found that Minnesota's law acted as a content-based regulation *as*

*applied* to a company's wedding films. *TMG*, 936 F.3d at 753. Similarly, the Accommodations Clause acts as a content-based regulation as applied to Bob's photographs. Virginia and amici simply fail to acknowledge that facially content-neutral laws can be triggered and applied in content-based ways. *See* ACLU 9 (asking court to focus on distinctions in "law itself," not in "application" to Bob's photography).

### III.   The Publication Clause restricts speech based on content and viewpoint.

Bob wants to adopt and distribute a policy that explains his religious motivations for celebrating only marriages between one man and one woman. Compl. ¶ 152. Bob also wants to post a statement to the same effect on his website and ask clients whether they seek same-sex wedding photography. *Id.* ¶¶ 162–64. Virginia does not contest that the Publication Clause prohibits him from doing so because of what he wants to say. MTD 18–19. That is paradigmatic content-based regulation. MPI 21–22.

Virginia's argument goes awry from the beginning by mischaracterizing the test in *Reed v. Town of Gilbert*, 576 U.S. 155 (2015). A law isn't content neutral just because it can be "justified without reference to the content of the regulated speech." *Id.* at 165 (rejecting same argument). "[T]his analysis skips the crucial first step in the content-neutrality analysis: determining whether the law is content neutral on its face." *Id.*

Unlike the Accommodations Clause, the Publication Clause facially regulates speech ("publish[ing] … any communication") and "draws distinctions based on the message a speaker conveys." *Reed*, 576 U.S. at 163. MPI at 21–22. It operates this way as-applied too. Bob can advertise, "No photographs of satanic weddings" if he wanted, but he cannot advertise "No photographs of same-sex weddings." That is a textbook content-based speech restriction.

Virginia and amici's confusion stems from the exception allowing restrictions on speech that threaten to engage in illegal conduct. *United States v. Williams*, 553 U.S. 285, 298 (2008)

(explaining this doctrine). Under this exception, a law prohibiting businesses from advertising "White Applicants Only" would regulate speech based on content but do so lawfully because the threatened activity—excluding applicants for employment based on race—is illegal *conduct*. *See Campbell v. Robb*, 162 F. App'x 460, 468 (6th Cir. 2006) (ban on discriminatory ads valid though "clearly a content-based speech regulation").

In contrast to employers threatening employment discrimination, which is illegal conduct, Bob wants to exercise control over his photography, which is protected speech. Virginia has no valid basis to restrict discussion or advertisement of this constitutionally protected activity. *Compare Bigelow v. Virginia*, 421 U.S. 809, 822 (1975) (invalidating ban on abortion advertising because "the activity advertised pertained to constitutional interests") *with Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*, 413 U.S. 376, 389 (1973) (upholding advertising restriction "when the [underlying] commercial activity itself is illegal and the restriction on advertising is incidental to a valid limitation on economic activity"). Virginia can no more ban Bob's desired statements than it could ban a group's statement declining to accept banners in their parade. *See TMG*, 936 F.3d at 757 n.5 (state could not ban film studio's statement like Bob's); *B&N*, 448 P.3d at 926 (same as to art studio's statement).

This is not to say Bob's proposed statements are merely commercial speech. *Contra* MTD 18. They are not. They do more than propose a commercial transaction. *Harris v. Quinn*, 573 U.S. 616, 648 (2014) (defining commercial speech). They discuss and are "inextricably intertwined with" Bob's protected religious expression. *Riley*, 487 U.S. at 796. So restricting them triggers strict scrutiny. *Id. See also Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983) (speech treated differently if it "advertises an activity itself protected by the First Amendment").

In addition, the Publication Clause also restricts Bob's speech based on viewpoint (MPI 23), and that always triggers strict scrutiny. *Matal v. Tam*, 137 S. Ct. 1744, 1767–69 (2017) (five justices agreeing that lower scrutiny did not apply to viewpoint-based restrictions on commercial speech); *Wandering Dago, Inc. v. Destito*, 879 F.3d 20, 39 (2d Cir. 2018) (interpreting *Matal* this way). *Accord R.A.V. v. City of St. Paul*, 505 U.S. 377, 389 (1992) ("State may not prohibit only that commercial advertising that depicts men in a demeaning fashion."). So no matter how Virginia construes Bob's speech, its decision to ban Bob's statements trigger strict scrutiny.

## IV.   The Accommodations Clause compels Bob to participate in religious ceremonies and regulates a hybrid of constitutional rights.

Whenever Bob photographs a wedding, he necessarily participates in the ceremony. Compl. ¶¶ 108–112. Bob believes, and courts have recognized, the religious significance of wedding ceremonies. *Id.* ¶ 113; MPI 24. Since the Free Exercise Clause and the Establishment Clause both prohibit compelled participation in religious ceremonies, Virginia cannot compel Bob to participate in weddings to which he objects. MPI 24–25.

Virginia assumes that it need only invoke *Employment Division v. Smith* to defeat this claim. 494 U.S. 872, 878–79 (1990). But laws cannot compel participation in religious ceremonies whether they are neutral and generally applicable or not. *See Masterpiece*, 138 S. Ct. at 1727 (requiring clergy to perform same-sex wedding ceremonies invalid); *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (invoking Establishment Clause and Free Exercise Clause to prohibit compelled attendance at event with prayer without invoking *Smith* rule).

To distinguish these cases, amici either misconstrue the record or the caselaw. For example, Bob alleges that he participates in weddings. *Compare* Decl. ¶¶ 203–06 *with* AU 16 (arguing Bob "presumably does make clear" that he does not participate). And *Masterpiece* did

not refuse to protect anyone but clergy. ACLU 14. *Masterpiece* did not even decide the "narrower issue" before it (forcing person "to make an expressive statement"), much less the separate participation question. 138 S. Ct. at 1728. Even amici conceded at *Masterpiece*'s oral argument that compelling a vendor's "physical participation in … a religious ceremony" would be a different issue, not governed by the *Smith* rule. Tr. of Oral Arg. at 77–78, *Masterpiece*, 138 S. Ct. 1719 (2018) (No. 16-111) (arguing on behalf of ACLU), https://bit.ly/2BKvORw.

Amici also mischaracterize the holding in *Fields v. City of Tulsa,* 753 F.3d 1000 (10th Cir. 2014) saying it upheld an order "merely" requiring a police officer to attend an Islamic event. AU 16. But "the order did not require him to attend because he could assign others to do so." *Fields*, 753 F.3d at 1009. Compelled attendance was not even addressed. In contrast, forcing an officer to "merely" attend events with group prayer violates the First Amendment. *See Marrero-Mendez v. Calixto-Rodriguez*, 830 F.3d 38, 44–45 (1st Cir. 2016) ("If these actions do not establish religious coercion, we would be hard pressed to find what would."). That is what Virginia would force Bob to do here.

Finally, Virginia incorrectly dismisses Bob's hybrid-rights claim as dependent on mere "dicta" from *Smith.* MTD 22–23. But as the Eighth Circuit explained, "*Smith* did more than simply speculate about how to treat a hybrid claim in some hypothetical future case. Rather, it described the operation of an existing doctrine." *TMG*, 936 F.3d at 760. And this description fits Bob's claim perfectly: compelling religious speakers to speak messages that violate their beliefs. *Smith*, 494 U.S. at 882 (citing *Wooley* and *Barnette* as examples). Couple this with the recent cases protecting paid speakers from celebrating same-sex weddings (*supra* § I.A) and Bob doesn't merely "mash together two losing First Amendment claims." AU 10. He combines two independently strong claims well-grounded in Free Exercise jurisprudence.

**V.      The Accommodations and Publication Clauses fail strict scrutiny.**

Because Virginia compels and restricts Bob's speech based on content and viewpoint,

Virginia must show that this application is narrowly tailored to serve a compelling state interest.

*Reed*, 576 U.S. at 163. Virginia can show neither.

Virginia invokes stopping discrimination as its compelling interest. MTD 23–24. But

Bob does not discriminate. He simply declines to communicate and celebrate certain messages.

*See supra* § I.C. So regulating Bob does not further Virginia's stated interest.

Virginia also frames its interest too generally. Virginia cannot merely invoke

discrimination but must "specifically identify" the problem its application solves, i.e. wedding

photographers discriminating and impeding access to photography in Virginia. *Brown*, 564 U.S.

at 799. So cases and national surveys referencing things like housing discrimination get Virginia

nowhere. MTD 4–5, 23–24. *See Reynolds v. Middleton*, 779 F.3d 222, 228 (4th Cir. 2015)

(government must show regulation "alleviates stated harms in a direct and material way");

*TMG*, 936 F.3d at 754 ("In an as-applied challenge like this one, the focus of the strict-scrutiny

test is on the actual speech being regulated, rather than how the law might affect others who are

not before the court."). Virginia cannot identify a single public accommodation that declines

services, much less an expressive one that declines to celebrate same-sex weddings.

And even if Virginia could identify an actual problem, stopping discrimination does not

justify compelling speech or participation in wedding ceremonies. MPI 27 (citing cases);

*Chelsey Nelson*, 2020 WL 4745771, at *11 (finding it "highly unlikely" that law forcing

wedding photographer to celebrate same-sex weddings could survive strict scrutiny because no

compelling interest to compel speech). *See also United States v. Playboy Entm't Grp., Inc.*, 529

U.S. 803, 818 (2000) ("It is rare that a regulation restricting speech because of its content will

ever be permissible.").

And Virginia fails to justify this interest too. While other cases discuss dignity harm inflicted on someone declined housing or food (conduct), declining to speak or participate in weddings "would be well understood in our constitutional order as an exercise of [constitutional freedoms], an exercise that gay persons could recognize and accept without serious diminishment to their own dignity and worth." *Masterpiece*, 138 S. Ct. at 1727. People understand that others don't want to speak messages they disagree with or physically participate in religious ceremonies they oppose.

Virginia also undermines its dignity interest by allowing rank status discrimination in its law. MPI 27–28; *see also* Va. Code § 2.2-3902 (exempting age discrimination in government programs when "reasonably necessary" for normal operations or general welfare); *id.* § 2.2-3904(C) (exempting all private clubs from public accommodation law). And this conclusion holds even though some exemptions appear in "other antidiscrimination provisions" and address other protected classes. MTD 22 n.14; ACLU 17 n.8; AU 6–8. What matters is effect, not location: whether exemptions undermine the government's alleged interests, not where those exemptions appear. Indeed, the mere failure to regulate something can undermine a law's stated interest. *See Brown*, 564 U.S. at 802 (failure to regulate booksellers, cartoonists, and movie producers undermined interest for law that only regulated video games); *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 544–45 (1993) (failure to regulate restaurant garbage disposal undermined interest for laws that only regulated killing animals). Though Virginia and amici argue exemptions are impossible because "every instance of discrimination" causes dignitary harm, ACLU 17, Virginia's actual exemptions prove otherwise.

And though everyone deserves dignity and respect, Bob does too. Forcing Bob to speak messages against his beliefs is "antithetical to the very moral, religious, and ideological

reasons" his business exists. *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 879 F.3d 101, 110 (4th Cir. 2018); Compl. ¶¶ 31–45. Indeed, compelling someone to speak is "always demeaning." *Janus v. Am. Fed'n of State, Cty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2464 (2018). That is why Bob and other speakers deserve the freedom to pick their message and to add their voice to the public debate. "[N]o other approach would comport with the premise of individual dignity and choice upon which our political system rests." *Cohen v. California*, 403 U.S. 15, 24 (1971).

With respect to tailoring, Virginia must "prove that it actually tried other methods to address the problem" at hand. *Reynolds*, 779 F.3d at 231. In particular, this means it tried "less intrusive tools readily available to it." *Billups*, 961 F.3d at 688. But Virginia does not explain why Bob's proposed alternatives won't work, let alone that it tried any of them. This Court "cannot simply accept the [State's] assurances" that the alternatives "would not sufficiently safeguard its interest." *Id.* at 689. This alone means Virginia fails strict scrutiny. "If the First Amendment means anything, it means that regulating speech must be a last—not first—resort." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 373 (2002).

Additionally, Virginia can't just declare that Bob's proposals won't work because they would undermine the law's goals. *Contra* MTD 24. When "vital First Amendment interests [are] at stake, it is not enough for the government simply to say that other approaches have not worked." *Reynolds*, 779 F.3d at 231 (cleaned up). And even though other jurisdictions have used better alternatives, MPI 28–29, Virginia hasn't even "shown that it considered different methods that other jurisdictions have found effective." *Billups*, 961 F.3d at 688.

Amici also invoke the slippery slope argument that protecting Bob will lead to widespread sexual orientation discrimination. AU 17–20. But Virginia must prove this. It has

not done so. "[T]he Government must present more than anecdote and supposition." *Playboy Entm't Grp.*, 529 U.S. at 822. And here the record undermines its claim: hundreds of Virginia photographers are willing to photograph and participate in same-sex weddings. Decl. ¶¶ 306–329. *See also Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 435–36 (2006) (rejecting slippery slope argument). So compelling Bob achieves very little.

## VI.   The remaining preliminary injunction factors favor granting relief.

As Bob already explained, the other preliminary injunction factors fall into place once Bob proves a First Amendment violation. MPI 8, 30. Virginia refutes none of the cases Bob cites but raises its standing argument. MTD 26. Bob refutes that elsewhere. *See* Br. in Resp. to Defs.' Mot. to Dismiss (filed concurrently). Virginia also insists that the balance of equities disfavor an injunction because it would frustrate public policy of preventing discrimination. MTD 26. Not so. Bob does not discriminate, he only seeks relief to choose the content of his speech, and his requested relief would still allow Virginia to stop status discrimination. *See supra* § I.C. In reality, Virginia "is in no way harmed by issuance of an injunction that prevents the state from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011).

## <u>Conclusion</u>

All Americans want to live consistently with their deeply held beliefs. And though Virginia and amici try to impugn his motives, Bob is no different. In the end, this Court need not choose between "gay rights and freedom of speech." *Chelsey Nelson*, 2020 WL 4745771, at *2. "America is wide enough for those who applaud same-sex marriage and those who refuse to." *Id.* Other courts already give artists and speakers in the wedding industry this right to freely express their views. This Court should too. Bob asks the Court to stop the ongoing violation of his First Amendment rights and to grant his preliminary injunction motion.

Respectfully submitted this 14th day of December, 2020.

By: *s/ C. Douglas Welty*

Jonathan A. Scruggs
Arizona Bar No. 030505
**Alliance Defending Freedom**
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jscruggs@ADFlegal.org

David A. Cortman
Georgia Bar No. 188810
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org

Johannes S. Widmalm-Delphonse
Minnesota Bar No. 396303
**Alliance Defending Freedom**
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
(571) 707-4655
(571) 707-4656 (facsimile)
jwidmalmdelphonse@ADFlegal.org

C. Douglas Welty
Virginia Bar No. 29480
**C. Douglas Welty PLC**
2111 Wilson Boulevard
Suite 800
Arlington, Virginia 22201
(703) 276-0114
(844) 456-7800 (facsimile)
cdwelty@weltyblair.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2020, I filed a true and accurate copy of the forgoing document with the Clerk of the Court using the CM/ECF system, which automatically send an electronic notification to attorneys of record.

Respectfully submitted on this 14th day of December, 2020.

/s/ *C. Douglas Welty*
C. Douglas Welty
*Attorney for Plaintiffs*