**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **Robert Updegrove**; and **Loudoun Multi-Images LLC** d/b/a **Bob Updegrove Photography**, | |
| Plaintiffs, | Case No. 1:20-cv-01141-CMH-JFA |
| v. | **Brief in Response to Defendants' Motion to Dismiss** |
| **Mark R. Herring**, in his official capacity as Virginia Attorney General; and **R. Thomas Payne, II**, in his official capacity as Director of Virginia Division of Human Rights and Fair Housing, | |
| Defendants. | |

## TABLE OF CONTENTS

Table of Authorities ................................................................................................... ii

Introduction .................................................................................................................. 1

Argument ...................................................................................................................... 2

I.     Bob has standing to challenge Virginia's law because it credibly threatens
       and chills his expressive activities. ................................................................... 3

       A.     Bob faces a credible threat that the law will be enforced against him
              because it facially restricts his desired expression. ................................. 4

       B.     Additional factors bolster Bob's standing, such as Virginia's refusal to
              disavow. ................................................................................................... 10

       C.     Bob need not show a specific enforcement threat or past request for
              objectionable photography for standing. ................................................. 14

       D.     Bob also has standing to challenge the law under the competitor-standing
              doctrine. ................................................................................................... 18

II.    Bob states a plausible claim that Virginia's law compels and restricts his protected
       speech, compels him to participate in religious ceremonies, and regulates a
       hybrid of rights. ............................................................................................... 20

III.   Bob states a plausible First Amendment claim that Virginia's law compels him to
       expressively associate and restricts his expressive association. ..................... 21

IV.    Bob states plausible First Amendment claims that Virginia's law infringes on his
       religious exercise. ........................................................................................... 24

Conclusion ................................................................................................................. 28

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott v. Pastides,*
900 F.3d. 226 (4th Cir. 2013)..............................................................................4, 8, 9

*Accord Lexmark International Inc. v. Static Control Components, Inc.,*
572 U.S. 118 (2014)..................................................................................................19

*ACLU v. Johnson,*
194 F.3d 1149 (10th Cir. 1999)..................................................................................9

*ACLU of Illinois v. Alvarez,*
679 F.3d 583 (7th Cir. 2012)....................................................................................16

*Adams v. Bain,*
697 F.2d 1213 (4th Cir. 1982)..................................................................................15

*Adams v. Watson,*
10 F.3d 915 (1st Cir. 1993)......................................................................................16

*American Booksellers Ass'n,*
484 U.S. 414 (2013)...............................................................................................8, 10

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...............................................................................................3, 20

*Babbitt v. United Farm Workers National Union,*
442 U.S. 289 (1979)...............................................................................................5, 17

*Beck v. McDonald,*
848 F.3d (4th Cir. 2017).............................................................................................2

*Bell Atlantic Corporation v. Twombly*
550 U.S. 544 (2007)..................................................................................................20

*Blackhawk v. Pennsylvania,*
381 F.3d 202 (3rd Cir. 2004)....................................................................................25

*Boy Scouts of American v. Dale,*
530 U.S. 640 (2000).....................................................................................21, 22, 23

*Brown v. Government of D.C.,*
390 F. Supp.3d 114 (D.D.C. 2019)...........................................................................20

*Brush & Nib Studio, LLC, et al., v. City of Phoenix,*
484 P.3d 890.....................................................................................................8, 16, 17

*Buchanan v. Fed. Election Commission,*
112 F. Supp.2d 58 (D.D.C. 2000).......................................................................19, 20

*California Democratic Party v. Jones,*
530 U.S. 567 (2000)..................................................................................................23

*Cedars-Sinai Medical Center v. Watkins,*
  11 F.3d 1573 (Fed. Cir. 1993) ................................................................ 63

*Charter v. U.S. Department of Agriculture,*
  412 F.3d 1017 (9th Cir. 2005) ................................................................23

*Chelsey Nelson Photography LLC v. Louisville/Jefferson County Metro Government,*
  No. 3:19-CV-851-JRW, 2020 WL 4745771 (W.D. Ky. August 14, 2020)........................8, 17

*Chin v. Port Authority of New York and New Jersey,*
  685 F.3d 135 (2d Cir. 2012) ................................................................6, 19

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah,*
  508 U.S. 520 (1993) ........................................................25, 26, 27

*City of Revere v. Massachusetts General Hospital,*
  463 U.S. 239 (1983) ................................................................15

*Clapper v. Amnesty International USA,*
  568 U.S. 398 (2013) ................................................................16

*Cooksey v. Futrell,*
  721 F.3d 226 (4th Cir. 2013) ................................................................4

*Department of Commerce v. New York,*
  139 S. Ct. 2551 (2019) ................................................................ 16

*Doe v. Bolton*,
  410 U.S. 179 (1973) ................................................................12, 14

*Employment Division, Department of Human Recourses of Oregon v. Smith,*
  494 U.S. 872 (1990) ................................................................ 25

*Fulton v. City of Philadelphia,*
  No. 19-123 2019 WL 3380520 (July 22, 2019) ................................................................ 28

*Fulton v. City of Philadelphia, Pennsylvania.,*
  140 S. Ct. 1104 (2020) ................................................................ 28

*Gibbs v. Buck,*
  307 U.S. 66 (1939) ................................................................ 3

*Griswold v. Driscoll,*
  616 F.3d 53 (1st Cir. 2010) ................................................................ 12, 15

*Harrell v. Florida Bar,*
  608 F.3d. 1241 (11th Cir. 2010)................................................................11, 12

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC,*
  565 U.S. 171 (2012) ................................................................27, 28

*International Society for Krishna Consciousness of Atlanta v. Eaves,*
  601 F.2d. 809 (5th Cir. 1979)................................................................12

*Jesus Christ is the Answer Ministries, Inc. v. Baltimore City.,*
  915 F.3d 256 (4th Cir. 2019)................................................................26

*Johanns v. Livestock Marketing Association*,
  544 U.S. 550 (2005) ....................................................................................................23

*Kenny v. Wilson*,
  885 F.3d. 280 (4th Cir. 2018) ....................................................................................4, 5

*Kerns v. United States*,
  585 F.3d.187 (4th Cir. 2009) ..........................................................................................12

*Lexington Fayette Urban County Human Rights Commission v. Hands on Originals*,
  529 S.W. 3d 291 (Ky. 2019) ...........................................................................................2

*Liberty University Inc. v. Lew*,
  733 F.3d 72 (4th Cir. 2013) .......................................................................................9, 18

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................................3

*Maryland Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) ..........................................................................................9

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission*,
  138 S. Ct. 1719 (2018) .................................................................................2, 21, 26, 27

*Masterpiece Cakeshop v. Elinis*,
  445 F. Supp.3d 1266 (D. Colo 2019) ..............................................................................2

*Matal v. Tam*,
  137 S. Ct. 1744 (2017) ..................................................................................................21

*McDermott v. Ampersand Pub., LLC*,
  593 F.3d 950 (9th Cir. 2010) ........................................................................................23

*MedImmune, Inc. v. Genentech, Inc*,
  549 U.S. 118 (2007) ..................................................................................................1, 10

*National Institute of Family & Life Advocates v. Becerra*,
  *138 S.* Ct 2361 (2018) ...................................................................................................9

*National Institute of Family & Life Advocates v. Harris*,
  839 F.3d 823 (9th Cir. 2016) ...........................................................................................9

*Nelson v. Warner*,
  No. CV 3:19-0898, 2020 WL 40024224 (S.D.W. Va. July 15, 2020) ...............................20

*North Carolina Right to Life Inc. v. Bartlett*,
  168 F.3d 705 (4th Cir. 1999) .......................................................................................4, 9

*Miami Herald Publishing Co. v. Tornillo*,
  418 U.S. 241 (1974) ......................................................................................................17

*Miller v. City of Wickliffe, Ohio*,
  852 F.3d 497 (2017) ...................................................................................................9, 10

*Mobil Oil Corporation v. Attorney General of Virginia*,
  940 F.2d. 73 (4th Cir. 1991) ...........................................................................8, 10, 11, 13

*New Hampshire Right to Life Political Action Committee v. Gardner,*
99 F.3d 8 (1st Cir. 1996) ......................................................................12

*People for the Ethical Treatment of Animals, Inc. v. Stein,*
737 F. App'x 122 (4th Cir. 2018) ........................................9, 10, 11, 13

*Perry v. Judd,*
471 F. App'x 219 (4th Cir. 2012) ..........................................................28

*Planned Parenthood of Central New Jersey v. Farmer,*
220 F.3d 127 (3rd Cir 2000) ...................................................................9

*Preston v. Leake,*
660 F.3d. 726 (4th Cir. 2011) ..................................................................4

*Richmond, Fredericksburg, & Potomac R.R. Co. v. United States,*
945 F.2d 765 (4th Circ. 1991) .................................................................3

*Roberts v. United States Jaycees,*
468 U.S. 609 (1984) ...............................................................................21

*Rothamel v. Fluvanna County, Virginia,*
810 F. Supp. 2d 771 (W.D. Va. 2011) ...................................................10

*Scardina v. Masterpiece,*
19CV32214 (Colo. Dist. Ct. 2020) ..........................................................2

*Sherley v. Sebelius,*
610 F.3d 69 (D.C. Cir. 2010) .................................................................18

*South Carolina Citizens for Life, Inc. v. Krawcheck,*
317 F.3d. 719 (7th Cir. 2003) ................................................................14

*Stilwell v. Office of Thrift Supervision,*
569 F.3d. 514 (D.C. Cir. 2009) ..............................................................11

*St. Paul Area Chamber of Commerce v. Gaertner,*
439 F.3d 481 (8th Cir. 2006) .................................................................17

*Susan B. Anthony List v. Driehaus (SBA List),*
573 U.S. 149 (2014) ....................................................3, 4, 10, 13, 16

*Telescope Media Group v. Lucero (TMG),*
936 F.3d 740 (8th Cir. 2019) ..............................5, 6, 7, 15, 17, 18

*United States In re Catholic Conference v. Baker,*
885 F.2d 1020 (2d. Cir. 1989) ..........................................................18, 19

*United States v. City of Chicago Heights,*
161 F. Supp. 2d 819 (N.D. Ill. 2001) ......................................................6

*United States v. Commonwealth of Virginia.,*
139 F.3d 984 (4th Cir. 1998) .................................................................12

*United States v. Gregory,*
871 F.2d 1239 (4th Cir. 1989) .............................................................6, 7

*Valencia v. City of Springfield, Illinois,*
  No. 3:17-cv-03278, 2019 WL 4386551 (C.D. Ill. 2019)......................................6

*Valle del Sol, Inc. v. Whitting,*
  737 F.3d 1006 (9th Cir. 2013)...............................................14

*Virginia v. American Booksellers Association Inc.,*
  484 U.S. 383 (1988) ...........................................................8, 9, 10

*Washington v. Arlene's Flowers, Inc.,*
  441 P.3d 1203 (Wash. 2019) ..................................................2

*Wolfson v. Brammer,*
  626 F.3d 1045 (9th Cir. 2019)...............................................12

*Zeneca, Inc. v. Shalala*
  213 F.3d 161 (4th Cir. 2000).................................................18

## **Statutes**

42 U.S.C. § 2000 a-5..................................................................6

42 U.S.C. § 2000e-6.................................................................6

42 U.S.C. § 3614(a)..................................................................6

Va. Code § 2.2-3902................................................................6—8

Va. Code § 2.2-3904................................................................1

Va. Code § 2.2-3904(B).............................................................7

Va. Code § 2.2-3906(A).............................................................6

Va. Code § 2.2-3907(A).............................................................13

## **Other Authorities**

*Susan Selasky,* Lesbian baker in Detroit got homophobic cake order: Why she made it
  anyway, DETROIT FREE PRESS (Aug. 13, 2020) *http://bit.ly/freearticle*

Press Release, Office of the Attorney General, Attorney General Herring Defends Virginia
  Values Act in Court (Nov. 17, 2020) https://bit.ly/AGpressrelease

**Introduction**

Bob Updegrove is a photographer who wants to create and post photographs online consistent with his religious beliefs and explain those beliefs to others. But Virginia's law requires Bob to offer, create, and post photographs he disagrees with; forbids him from formalizing a policy explaining his editorial choices; and prevents him from expressing this policy to others.[1] If Bob acts as he wants, Virginia's law threatens him with large fines, damages, attorneys' fees, injunctions, administrative procedures, and lawsuits. This has reasonably chilled Bob's expression, which infringes his First Amendment rights.

In its motion to dismiss, Virginia does not deny that its law forbids Bob's expression or that it will prosecute Bob. To the contrary, Virginia unreservedly defends its law and declares it has a "compelling" need to force Bob to use his artistic talents to commemorate and celebrate same-sex weddings. Defs.' Combined Opp. to Prelim. Inj. and Mem. in Supp. of Mot. to Dismiss ("MTD") 23, ECF Nos. 20, 22. Nonetheless, Virginia calls Bob's fears of enforcement too speculative because its law is new. So Virginia advises Bob not to worry. He can always raise his constitutional defenses after he is sued in state court—forgoing any federal forum, wagering his business, and risking severe fines for the opportunity to vindicate his rights.

Virginia's theory would make pre-enforcement challenges against new laws nearly impossible. Bob doesn't have to "bet the farm" and risk losing his business just to protect his rights. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). For standing in this circuit, Bob merely needs to show that a law's text arguably forbids his desired activities. He has done that and much more, especially since Virginia's Attorney General has all but promised

---

[1] "Bob" refers to Plaintiffs collectively. "Virginia" refers to Defendants collectively. "Division" refers to the Division of Human Rights. "Virginia's law" or "the law" refers to the Virginia Humans Rights Act as amended by the Virginia Values Act. Va. Code § 2.2-3904 *et seq.*

to sue Bob and people like him, just as other officials and private individuals have done across the country.[2]

Virginia's merits argument fares no better. Labeling Bob's speech as conduct does not make it so. And whether Bob's speech—the photography Bob creates and distributes on his own website—can be attributed to him or his clients is, for one, legally irrelevant, and two, something this Court should not decide at the motion-to-dismiss stage. Bob has already shown that he will likely prevail on several claims under a preliminary-injunction standard. Reply Br. in Supp. of Pls.' Prelim. Inj. Mot. ("MPI Reply") 2–20 (filed concurrently). These claims necessarily satisfy the less demanding motion-to-dismiss standard. For Bob's claims under other legal theories, Virginia does not even address them in its motion to dismiss. Bob need only show these theories are plausible. He has done so. Virginia's motion to dismiss should be denied in full.

## **Argument**

Virginia first brings a Rule 12(b)(1) motion to dismiss for lack of standing. "A defendant may challenge subject-matter jurisdiction in one of two ways: facially or factually." *Beck v. McDonald*, 848 F.3d 262, 270 (4th Cir. 2017). A facial attack considers only the

---

[2] *See Masterpiece Cakeshop, Ltd. v. Colo. Civil Rights Comm'n*, 138 S. Ct. 1719 (2018); *Washington v. Arlene's Flowers, Inc.*, 441 P.3d 1203 (Wash. 2019); *Lexington-Fayette Urban Cty. Human Rights Comm'n v. Hands On Originals*, 529 S.W.3d 291 (Ky. 2019); *Masterpiece Cakeshop Inc. v. Elenis*, 445 F. Supp. 3d 1226, 1236–37 (D. Colo. 2019) (describing second civil rights complaint against cake designer Jack Phillips following a request to design a gender-transition cake); Defs.' Mot. to Dismiss Compl., *Scardina v. Masterpiece Cakeshop*, 19CV32214 (Colo. Dist. Ct. 2020) (describing lawsuit against Jack Phillips by same complainant as *Masterpiece Cakeshop Inc. v. Elenis*), available at: https://bit.ly/MP3motiontodismiss. *See also* Susan Selasky, *Lesbian baker in Detroit got homophobic cake order: Why she made it anyway*, Detroit Free Press (Aug. 13, 2020), http://bit.ly/freeparticle (describing how someone targeted and asked a lesbian cake designer for a cake condemning homosexuality).

complaint and accepts its allegations as true. *Id.* A factual attack considers evidence beyond the complaint to determine whether the court has jurisdiction. *Id.* Here, Virginia cites evidence outside the complaint. *See* MTD Ex. A, ECF Nos. 20-1, 22-1. But Virginia's evidence does not contradict any allegation in Bob's verified complaint or declaration. So Bob's allegations should be taken as true. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993) (in considering factual challenge to court's jurisdiction, "uncontroverted factual allegations are accepted as true" (citing *Gibbs v. Buck*, 307 U.S. 66, 72 (1939)). Only when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law" should the court grant a motion to dismiss for lack of standing. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

Virginia also brings a Rule 12(b)(6) motion to attack the complaint's allegations. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–80 (2009). A complaint overcomes this motion if it states a plausible claim for relief when a court views the complaint most favorably to the plaintiff and takes all well-pleaded factual allegations as true. *Id.* at 678–79.

Bob satisfies these standards because (I) Virginia's law credibly threatens and chills his expressive activities; (II) Bob has plausibly alleged that the law compels and restricts his speech, forces him to participate in religious events, and burdens a hybrid of rights; (III) Bob has plausibly alleged that the law violates his right to expressive association; and (IV) Bob plausibly alleged that the law violates his right to freely exercise his religion.

**I.    Bob has standing to challenge Virginia's law because it credibly threatens and chills his expressive activities.**

To sue, Bob must prove standing and ripeness. *Susan B. Anthony List v. Driehaus* (*SBA List*), 573 U.S. 149, 157 n.5 (2014). For Article III standing, a plaintiff must show an injury-in-fact, causation, and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

Here, Virginia only challenges injury-in-fact. And the injury-in-fact that establishes standing also establishes ripeness, as Virginia acknowledges. MTD 9.

To show injury-in-fact in the pre-enforcement context, plaintiffs must typically show a "substantial risk" of future harm. *SBA List*, 573 U.S. at 158. But "standing requirements are somewhat relaxed in First Amendment cases." *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013). In this context, Bob can prove a substantial risk of harm by showing 1) that he intends to engage in speech and faces a credible enforcement threat if he does so, or 2) that he has refrained from engaging in speech because of the law's "objectively reasonable chilling effect." *Id.* at 235–37. Both prongs require a credible-enforcement threat. *See Abbott v. Pastides*, 900 F.3d 160, 176 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1292 (2019).

Bob can show both a credible threat of enforcement and an objective, ongoing chilling effect because (A) Virginia's law facially restricts his desired expression. That alone justifies standing. Besides that, (B) Bob has identified many other factors that bolster his standing, such as Virginia's refusal to disavow enforcement. (C) Nor must Bob prove anything else for standing, such as past enforcement threats or requests to photograph same-sex weddings. And finally (D), Bob also has standing because Virginia's law burdens him in comparison to his competitors.

### A.   Bob faces a credible threat that the law will be enforced against him because it facially restricts his desired expression.

To show a credible threat of enforcement, Bob need only show that a "non-moribund statute … facially restricts expressive activity by the class to which the plaintiff belongs." *N.C. Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 710 (4th Cir. 1999) (cleaned up); *Kenny v. Wilson*, 885 F.3d 280, 288 (4th Cir. 2018) (acknowledging this "presumption" of enforcement); *Preston v. Leake*, 660 F.3d 726, 735–36 (4th Cir. 2011) (same). And Bob does not have to show that a

law definitely covers his desired expression, only that the law "arguably" does so. *Kenny*, 885 F.3d at 288 (quoting *Babbitt v. Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)). Bob meets this standard because his desired activities are expressive and arguably forbidden by Virginia's law.

First, Bob wants to offer, create, and post photographs consistent with his religious beliefs about marriage; adopt and distribute a policy explaining and formalizing this editorial choice; post a statement on his website explaining this policy; and ask potential clients whether they want photography services violating Bob's beliefs. Compl. ¶¶ 150–65. *See also* Compl. Ex. 1 (desired editorial policy); Ex. 2 (desired public statement). The First Amendment protects all these activities. Pls.' Br. in Supp. of Prelim. Inj. Mot. ("MPI") 9–10.

Second, Virginia's law arguably forbids all these desired activities. The law defines public accommodations as "businesses offering or holding out to the general public goods, [and] services" Va. Code § 2.2-3904(A). Bob's photography business does this. Compl. ¶ 18.

As a result, Bob's business must comply with the law's Accommodations Clause which requires Bob to offer, create, and post photographs celebrating same-sex weddings because Bob already offers, creates, and posts photographs celebrating opposite-sex weddings. *See* Va. Code § 2.2-3904(B) (making it illegal "to refuse, withhold from, or deny any individual, or to attempt to refuse, withhold from, or deny any individual, directly or indirectly, any" service "made available in any place of public accommodation, or to segregate or discriminate … on the basis of … sexual orientation"); *see also Telescope Media Group v. Lucero* (*TMG*), 936 F.3d 740, 748–49 (8th Cir. 2019) (explaining how similarly worded law required film studio to offer to create films celebrating same-sex weddings); *id.* at 768–69 (Kelly, J., concurring in part and

dissenting in part) (agreeing that same law forbid film studio's "business model" of offering films celebrating only opposite-sex weddings).

Virginia and amici implicitly agree with this statutory understanding. *See* MTD 12–14 (arguing that law targets act of discriminating and effect on Bob's speech is incidental); ACLU 4 (arguing that Bob "plans to violate the statute" by offering to celebrate only opposite-sex weddings and posting his desired statements).

Virginia's law also forbids Bob from even implementing policy or maintaining a practice of offering to create and post wedding photographs only celebrating opposite-sex weddings. Specifically, the law allows the Attorney General to sue someone if that official "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights granted by this chapter." Va. Code § 2.2-3906(A).

Courts have interpreted this pattern-or-practice language to forbid merely adopting a policy officials considered discriminatory. *See Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 149 (2d Cir. 2012) (mere "existence of a discriminatory policy" is evidence of pattern or practice under Title VII); *United States v. City of Chicago Heights*, 161 F. Supp. 2d 819, 842 (N.D. Ill. 2001) ("The Attorney General may demonstrate the existence of a 'pattern or practice' of discrimination by showing the existence of a discriminatory policy alone.").[3] *See also United*

---

[3] These cases interpret federal statutes that have nearly identical language as Virginia's law. *See* 42 U.S.C. § 2000e-6 (Attorney General can sue "[w]henever the Attorney General has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights" of the statute); 42 U.S.C. § 2000a-5 (same); 42 U.S.C. § 3614(a) (same). And the Department of Justice has also taken the position that this statutory language forbids adopting a discriminatory policy as well. *See* The United States' Mot. for Partial Summ. J. on Liability, *Valencia v. City of Springfield, Ill.*, No. 3:17-cv-03278, 2019 WL 4386551, at *28–30 (C.D. Ill. 2019). Virginia's law also incorporates federal discrimination laws into its own. Va. Code § 2.2-3902 ("Conduct that violates any

*States v. Gregory*, 871 F.2d 1239, 1242 (4th Cir. 1989) ("The Supreme Court has recognized that when an employer's discriminatory policy is known, subjecting oneself to the humiliation of explicit and certain rejection is not required to make out a case of discrimination.").

Next, because the Accommodations Clause forbids Bob from exercising his editorial discretion or adopting his desired editorial policy, the Clause also prohibits him from publishing the policy, explaining the policy to others, or asking questions to implement the policy. Va. Code § 2.2-3904(B) (making it illegal "to attempt to refuse, withhold from, or deny any individual, directly or indirectly, any" service "made available in any place of public accommodation, or to segregate or discriminate ... on the basis of ... sexual orientation"); *see also TMG*, 936 F.3d at 757 n.5 (interpreting similar language to forbid film studio from publishing statement declining to create films celebrating same-sex weddings).

Virginia and amici implicitly agree. MTD 18–19, 20 n.13; ACLU 4 ("The Photography Studio plans to violate the statute ... by displaying and distributing a written policy stating that its wedding photography services will not be provided to same-sex couples."); ACLU 13 ("Just as there is no constitutional right to discriminate, there is no concomitant right to publish a policy of discrimination.").

The law's Publication Clause also acts like the Accommodations Clause. The Publication Clause prohibits Bob from publishing his desired policy or his website statement or otherwise informing clients that he will only create wedding photographs consistent with his beliefs. *See* Va. Code § 2.2-3904(B) (making it unlawful "to publish, circulate, issue, display, post, or mail, either directly or indirectly, any communication" that services will be "refused,

---

Virginia or federal statute or regulation governing discrimination ... is an unlawful discriminatory practice under this chapter.")

withheld from, or denied" on basis of sexual orientation). Virginia and amici again concur. *See* MTD 18–19, ACLU 13; *see also Chelsey Nelson Photography LLC v. Louisville/Jefferson Cty. Metro Gov't*, No. 3:19-CV-851-JRW, 2020 WL 4745771, at *4 (W.D. Ky. Aug. 14, 2020) (interpreting similar statutory language to ban photographer's desired statement declining to photograph same-sex weddings); *Brush & Nib Studio, LC v. City of Phoenix* (*B&N*), 448 P.3d 890, 920 (Ariz. 2019) (interpreting similar statutory language to prohibit calligraphy studio's desired statement declining to promote same-sex weddings).

Finally, the law itself contemplates a broad interpretation of its provisions. Va. Code § 2.2-3902 (stating that "[t]he provisions of this chapter shall be construed liberally for the accomplishment of its policies"). Add this to the law's text and Virginia's stated position and positions taken elsewhere about similar laws, and Virginia's law more than meets the threshold of arguably covering Bob's desired activities. This Court should therefore assume a credible threat of enforcement.

Ignoring the standard in this circuit, Virginia argues that Bob must prove an actual "enforcement action in the past," either against him or someone else. MTD 10 (citing *Abbott*, 900 F.3d at 176). But the Fourth Circuit has rejected this argument, which "is apparently a favorite of the Virginia Attorney General." *Mobil Oil Corp. v. Att'y Gen. of Va.*, 940 F.2d 73, 76 (4th Cir. 1991) (finding standing for plaintiff to challenge law before it went into effect because "[w]e see no reason to assume that the Virginia legislature enacted this statute without intending it to be enforced").

Indeed, the U.S. Supreme Court and Fourth Circuit have often found standing when plaintiffs challenged laws before they were enforced, whether against plaintiffs or anyone else. *See Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392–93 (1988) (finding standing to

challenge law before it became effective because danger was "one of self-censorship; a harm that can be realized even without an actual prosecution"); *People for the Ethical Treatment of Animals, Inc. v. Stein* (*PETA*), 737 F. App'x 122, 126 (4th Cir. 2018) (finding standing to challenge law "[s]hortly after the Act became effective"); *Liberty Univ., Inc. v. Lew*, 733 F.3d 72, 90 (4th Cir. 2013) (finding standing to challenge statute before going into effect because university had to "take measures to ensure compliance in advance"); *N.C. Right to Life*, 168 F.3d at 710 (finding standing even though "the State points out that in the twenty-five years since the statute's enactment, it has never interpreted it to apply to groups engaging only in issue advocacy").[4]

The cases Virginia cites do not say otherwise. Virginia's Fourth Circuit cases do not concern First Amendment rights, or they involved plaintiffs who had no concrete intent to violate the law, or they involved officials who allowed plaintiffs to engage in their desired activities. *See Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020) (Second Amendment plaintiffs "have not alleged any concrete intention to (arguably) violate" challenged law); *Abbott*, 900 F.3d at 176 (officials provided "written notice that neither investigation nor sanction was forthcoming" for plaintiffs' past actions). And Virginia's Sixth Circuit case involved a permitting system where the plaintiff never sought a permit. *Miller v. City of Wickliffe, Ohio*, 852 F.3d 497, 505–06 (2017) ("And merely applying for a license …. carried

---

[4] Other circuit courts agree. *See Nat'l Inst. of Family & Life Advocates v. Harris*, 839 F.3d 823, 833 (9th Cir. 2016) (finding standing where plaintiffs sued before law became effective so they "could not have demonstrated a significant history of enforcement"), *rev'd and remanded on other grounds sub nom. Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361 (2018); *Planned Parenthood of Cent. N.J. v. Farmer*, 220 F.3d 127, 147 (3rd Cir. 2000) (finding credible fear where lawsuit "filed the day the Act was to have become effective and before the Act had been interpreted by the state courts or enforcement agencies"); *ACLU v. Johnson*, 194 F.3d 1149, 1153, 1155 (10th Cir. 1999) (finding standing where lawsuit was filed two months before law became effective).

no risk."). In other words, the law did not facially forbid the plaintiffs' desired behavior. None of this is true in Bob's situation.

Because Virginia can cite no case requiring past enforcement, Bob need not wait to "raise a First Amendment defense" until he has been sued. MTD 11. If Bob were forced to wait until a lawsuit was filed against him, Bob could only raise his defense in a state court or administrative proceeding. That would force Bob to forgo his right to protect his federal constitutional rights in federal court. Pre-enforcement suits exist so that citizens don't have to wait, get sued, and then raise defenses in a forum of the state's choosing. No one has to choose "between abandoning [their] rights or risking prosecution." *MedImmune*, 549 U.S. at 129. *See also Mobil Oil*, 940 F.2d at 76 (rejecting Virginia Attorney General's argument that plaintiff "should violate the law and wait to see what happens"); *Rothamel v. Fluvanna Cty., Va.*, 810 F. Supp. 2d 771, 779 (W.D. Va. 2011) (rejecting argument that plaintiff could "go ahead and do it and if he infringes [the law] then it will be up to the county to decide if it wants to try and to enforce this against him and if it does then he will have an opportunity to defend it").

Simply put, past prosecution in this Circuit is not necessary; being covered by the statute is. Bob has shown that. So he has standing.

**B.     Additional factors bolster Bob's standing, such as Virginia's refusal to disavow future enforcement.**

Although Bob has established standing because the law arguably forbids his expression, several other factors bolster the credible threat Bob faces.

First, Virginia has not disavowed future enforcement against Bob if he engages in his desired activities *See SBA List*, 573 U.S. at 165 (finding that absence of disavowal favored standing); *Am. Booksellers*, 484 U.S. at 393 (finding standing in part because "[t]he State has not suggested that the newly enacted law will not be enforced"); *PETA*, 737 F. App'x at 130–31

(finding that a failure to disavow supported "reasonable and well-founded fear that the Act *will be* enforced against [PETA] if they carry out their plans"); *Mobil Oil*, 940 F.2d at 76 (highlighting that "Attorney General has not, however, disclaimed any intention of exercising her enforcement authority"). Virginia cannot have it both ways—denying any credible threat of enforcement yet reserving its right to investigate and prosecute Bob at any moment.

Second, Virginia does not simply refuse to disavow but actively defends its authority to prosecute Bob, declares a "compelling interest" in doing so, and refuses to provide any exception for Bob. MTD 23–24 (arguing that the law must comprehensively cover the commercial marketplace and an exception for Bob "would fatally undermine" state's "interests of the highest order"); Press Release, Office of the Attorney General, Attorney General Herring Defends Virginia Values Act in Court (Nov. 17, 2020) https://bit.ly/AGpressrelease ("I will do everything in my power to defend the Virginia Values Act and make sure that it continues to protect Virginia's LGBTQ community.").

This too bolsters standing. *See Mobil Oil*, 940 F.2d at 77  ("[The Attorney General's] willingness to attack the substance of Mobil's claims creates the odor of a 'case or controversy'—precisely what she claims is absent."); *Harrell v. Fla. Bar*, 608 F.3d 1241, 1257 (11th Cir. 2010) ("[I]f the enforcing authority is defending the challenged law or rule in court, an intent to enforce the rule may be inferred."); *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518 (D.C. Cir. 2009) (finding it "more than a little ironic that [the government] would suggest Petitioners lack standing and then, later in the same brief, label Petitioner Stilwell as a prime example of … the very problem the Rule was intended to address") (cleaned up).

In fact, the Attorney General filed briefs elsewhere supporting enforcement of laws like Virginia's against businesses like Bob's. Compl. ¶¶ 181, 185. While Virginia claims that these

"public statement and *amici curiae* briefs … say nothing about how this statute will be enforced" (MTD 11 n.10), they do. The laws are similar (public accommodation laws), the plaintiffs are similar (businesses creating speech), and the legal issues are similar (compelled speech, restricted speech, free exercise). Virginia cites no case and provides no reason why this Court should disregard the state's formal legal position in similar litigation involving similar litigants. *See United States v. Com. of Va.*, 139 F.3d 984, 987 n.3 (4th Cir. 1998) (finding credible enforcement threat because Virginia officials, including Attorney General, made several statements indicating that law applied to plaintiffs).

Third, Virginia recently enacted its law. Contrary to Virginia's argument, this recency makes enforcement more likely, not less. *See Doe v. Bolton*, 410 U.S. 179, 188 (1973) (physicians had standing to challenge abortion restriction that was "recent and not moribund"); *Harrell*, 608 F.3d at 1257 ("If a challenged law or rule was recently enacted … an intent to enforce the rule may be inferred."); *Int'l Soc. for Krishna Consciousness of Atlanta v. Eaves*, 601 F.2d 809, 821 (5th Cir. 1979) ("[T]he ordinance was enacted only months ago and we are probably entitled to assume that law enforcement agencies will not disregard such a recent expression of the legislature's will.").[5]

---

[5] The more recent a law is, the less relevant its enforcement history becomes. *See Wolfson v. Brammer*, 616 F.3d 1045, 1060 (9th Cir. 2010) (giving past enforcement "little weight" in part because law was recent); *N.H. Right to Life Political Action Comm. v. Gardner*, 99 F.3d 8, 13 (1st Cir. 1996) ("[A] credible threat of present or future prosecution itself works an injury that is sufficient to confer standing, even if there is no history of past enforcement."). If the Court believes that the enforcement history is still relevant though, the Court should allow Bob to conduct jurisdictional discovery in this case since Virginia's factual attack goes to the merits of Bob's claim. *See infra* § I.C; *Kerns v. United States*, 585 F.3d 187, 193 (4th Cir. 2009) (concluding that a district court erred by failing to give "procedural safeguards—such as discovery," where jurisdiction was intertwined with merits).

Fourth, the law makes it easy for multiple parties to begin enforcement proceedings against Bob. The Attorney General, the Division, or any aggrieved party can file an administrative complaint with the Division. Va. Code § 2.2-3907(A). This complaint triggers a long and burdensome administrative process involving an investigation, responding to the complaint, discovery exchange, and hearings. Compl. ¶¶ 190–201. Merely going through this process causes harm, no matter its outcome. *SBA List*, 573 U.S. at 165–66 (noting burdens caused by administrative process).

Adding to that, the Attorney General may sue Bob at any time in state court. Compl. ¶ 179. And private parties may also file a lawsuit after receiving a right-to-sue letter from the Division. *Id.* ¶ 204. These judicial proceedings will require even more time and resources to defend than administrative proceedings. *See SBA List*, 573 U.S. at 165 (noting that proceedings inflict injury by forcing person "to divert significant time and resources to hire legal counsel and respond to discovery requests").

Fifth, the law threatens serious penalties, including attorneys' fees, costs, damages, injunctions, and fines up to $50,000 for first-time violations and $100,000 for subsequent violations. Compl. ¶ 208. Courts have found pre-enforcement standing when laws threatened much less than this. *See PETA*, 737 F. App'x at 131 n.4 (standing because law provides for "stiff civil remedies," including "damages in the amount of $5,000 per day … plus attorneys' fees and costs"); *Mobil Oil*, 940 F.2d at 75 (standing challenge law which created a "stiff civil remedy": $2,500 in liquidated damages, actual damages, and attorneys' fees).

Not only is Bob covered by the statute, there are multiple additional reasons for Bob to fear enforcement. Bob has far exceeded the minimum showing to prove standing.

**C.      In order to have standing, Bob need not show a specific enforcement threat or past request for objectionable photography for standing.**

Virginia tries to place two more standing requirements on Bob: that he prove that (1) Virginia officials "threatened prosecution" or (2) he has "been approached by potential clients about photographing a same-sex wedding or that he has refused service." MTD 10–11 (citation omitted). Neither is necessary.

As for a specific threat, courts in this circuit and elsewhere do not require it. "[B]ecause free speech can be chilled prior to enforcement, a plaintiff bringing a First Amendment claim need only show a 'credible threat of prosecution,' rather than a 'threat of specific future harm.'" *S.C. Citizens for Life, Inc. v. Krawcheck*, 301 F. App'x 218, 221 (4th Cir. 2008) (citation omitted); *see also Bolton*, 410 U.S. at 188 (concluding that plaintiffs had standing even though no plaintiff has "been prosecuted, or threatened with prosecution"); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1015 n.5 (9th Cir. 2013) ("[W]e have never held that a specific threat is necessary to demonstrate standing."). Bob need not wait for the Attorney General to come knocking on his door. Of course, that knock has come already. As noted above, Virginia's briefs and press releases indicate Virginia's intent to enforce its law against Bob. *Supra* § I.B.

Moreover, to have standing Bob need not identify a past request to photograph same-sex weddings or a denial of a request. This is so for at least three reasons. First, Bob can offer to create photographs celebrating only opposite-sex weddings, formally adopt his desired editorial policy, distribute his desired policy, publish his desired website statement, and ask clients particular questions without any pending request to photograph a same-sex wedding. Bob *alone* controls whether he takes these actions, he can immediately do so, and doing so instantly violates the law. That in turn allows the Attorney General, the Division, and private parties to immediately file administrative complaints or lawsuits against Bob. Past request or not. *See*

*supra* § I.A. (explaining how Virginia's law works). So Bob has reasonably restricted his expression. Past request or not.

Second, as explained below, the provisions in Virginia's law regulate Bob's speech in an intertwined way. If Bob has standing to challenge one provision, he can challenge the others. *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243 n.5 (1983) (addressing constitutional challenge because "we could not resolve the question … [of] standing without addressing the constitutional issue"); *Adams v. Bain*, 697 F.2d 1213, 1220 (4th Cir. 1982) (reversing dismissal because jurisdictional facts were "so intertwined" with merits "that 12(b)(1) is an inappropriate basis upon which to ground the dismissal"); *Griswold v. Driscoll*, 616 F.3d 53, 56 (1st Cir. 2010) (exercising jurisdiction because "the dispositive questions of standing and statement of cognizable claim are difficult to disentangle").

For example, in deciding whether Bob can constitutionally adopt or distribute his desired policy declining to create photographs celebrating same-sex weddings, this Court will need to determine whether Bob can constitutionally decline to create these photographs. The ability to adopt or communicate the policy turns on Bob's right to engage in the underlying activity discussed in the policy. *See* MPI Reply § III (explaining this point). So, because Bob has standing to challenge the provisions restricting his speech and his policy, he has standing to challenge the provisions compelling his speech as well.

Even Virginia and amici agree with this intertwinement analysis. MTD 18–19; ACLU 13 ("Just as there is no constitutional right to discriminate, there is no concomitant right to publish a policy of discrimination."). And courts do too. *See TMG*, 936 F.3d at 757 n.5 ("If creating videos were conduct that Minnesota could regulate, then the State could invoke the incidental-burden doctrine to forbid the Larsens from advertising their intent to engage in discriminatory conduct.

But in this case, Minnesota cannot compel the Larsens to speak, so it cannot force them to remain silent either." (citations omitted)); *B&N*, 448 P.3d at 926 (art studio could post statement because its "intended refusal to make custom wedding invitations celebrating a same-sex wedding is legal activity").

Third, even setting aside that Bob can violate the law and Virginia can prosecute him without any pending request, Bob does not need to identify a pending request were Virginia to change its law and require requests before enforcement. Bob merely needs to show a "substantial risk that the harm will occur," *SBA List*, 573 U.S. at 158 (cleaned-up), not a "literal[] certain[ty]" of future harm. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013). *See also ACLU of Ill. v. Alvarez*, 679 F.3d 583, 594 (7th Cir. 2012) ("Preenforcement suits always involve a degree of uncertainty about future events.").

Bob has established a substantial risk of receiving objectionable requests. Not only does Bob operate in the wedding industry, receive wedding requests, and promote his wedding business online (Compl. ¶¶ 20, 95–96), officials and private individuals have targeted wedding professionals like Bob all across the country. *See supra* n.2. Virginia, meanwhile, has indicated its intent to enforce, facilitated easy enforcement by officials and private individuals, and threatened severe penalties. *See supra* § I.B.

These factors show that Bob faces much more than a substantial risk of receiving an objectionable request. The risk is overwhelming—it is "predicated on actual market experience and probable market behavior." *Adams v. Watson*, 10 F.3d 915, 923 (1st Cir. 1993); *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565–66 (2019) (standing supported because plaintiff relies "on the predictable effect of Government action on the decisions of third parties"). In this seek-and-destroy environment for creative professionals, Bob would be foolish to do anything

but restrict his own speech. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 257 (1974) ("right-of-access statute" caused newspapers to "avoid controversy" and had chilling effect even before third party could request access and trigger statutory obligations).

Unsurprisingly then, many courts have allowed creative professionals to challenge laws like Virginia's—even without identifying any pending request for same-sex weddings. *See TMG*, 936 F.3d at 749–50 (film studio had standing in part because state "publicly announced" that its law "requires all private businesses … to provide equal services for same- and opposite-sex weddings"); *B&N*, 448 P.3d at 901–02 (art studio had standing "given the City's assertion [in litigation] that it can apply the Ordinance to Plaintiffs' custom wedding invitations"); *Chelsey Nelson*, 2020 WL 4745771, at *4 (wedding photographer had standing in part because city refused to disavow and any member of public could initiate enforcement).

While Virginia objects that *TMG* cited the state's past enforcement and use of testers (MTD 11), *B&N* did not require or rely on these factors. 448 P.3d at 901 (plaintiff could show standing despite "lack of … criminal enforcement" (citing *Babbitt*, 442 U.S. at 298, 300–01)). And *TMG* did not require these factors either. Indeed, the Eighth Circuit (like the Fourth) does not require past enforcement (or testers) for standing, but merely requires that a law "on [its] face, prohibit" a plaintiff's desired activities. *St. Paul Area Chamber of Commerce v. Gaertner*, 439 F.3d 481, 485 (8th Cir. 2006) (finding standing even though state "never prosecuted anyone under the Minnesota Statutes or made any public statements threatening to do so" (cleaned up)); *see also Chelsey Nelson*, 2020 WL 4745771, at *4 (citing multiple factors to assess credible threat and awarding standing although some factors absent). Once again, Virginia mistakes sufficient conditions for necessary ones.

No matter, Virginia checks more standing boxes here than Minnesota did in *TMG*. Virginia has made more public statements indicating enforcement; Virginia passed its law much more recently; and Virginia has encouraged and deputized everyone to be a tester by allowing private individuals and certain state officials to initiate administrative complaints and lawsuits on their own, whether Bob receives an objectionable request or not. *Supra* § I.B. Put it all together and Bob has as strong, if not stronger, basis for standing than these other cases. That in turn justifies standing under any standard, including the Fourth Circuit's.

### D. Bob also has standing to challenge the law under the competitor-standing doctrine.

Apart from standing based on enforcement and chilling effect, Bob also has standing because Virginia's law gives his competitors an unfair advantage in the marketplace.

Under the competitor-standing doctrine, a plaintiff can suffer an injury-in-fact when government action gives a competitor an illegal benefit, leading to increased competition. *Zeneca, Inc. v. Shalala*, 213 F.3d 161, 170 n.10 (4th Cir. 2000) (finding standing where drug manufacturer suffered increased competition from agency approval of generic drug); *Sherley v. Sebelius*, 610 F.3d 69, 73 (D.C. Cir. 2010) ("basic requirement" of competitor standing is "that the complainant show an actual or imminent increase in competition, which increase we recognize will almost certainly cause an injury in fact"). And at this stage, Bob "need not prove that the [law] will increase [his] costs" or otherwise cause him economic injury; he "need only plausibly allege that it will." *Liberty Univ.*, 733 F.3d at 90.

Here, Virginia's law places unconstitutional burdens on Bob that do not affect his direct competitors—other wedding photographers in the Virginia wedding market. *See In re U.S. Catholic Conference*, 885 F.2d 1020, 1029 (2d Cir. 1989) (to show competitor standing,

plaintiff "must show that he personally competes in the same arena with the party to whom the government has bestowed the assertedly illegal benefit").

For example, Virginia's law hinders Bob's ability to operate efficiently and to tailor his business and message the way he wants by prohibiting Bob from offering his desired services, adopting his editorial policy, posting his statement, or even asking potential clients what type of services they seek. Compl. ¶¶ 150–65. The law also causes Bob to lose time researching requests out of fear that they may seek services he cannot provide consistent with his beliefs. *Id.* ¶¶ 159–61. And the law causes reputational harm too by requiring him to offer services that he cannot carry out and by preventing him from being transparent with the public and potential clients. *Id.* ¶¶ 164, 169. *Accord Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 125 (2014) (standing under Lanham Act where reputational injury caused by defendant's false advertising). Bob simply cannot operate or promote his business the way he wants because of Virginia's law.

In contrast, many other Virginia wedding photographers do not face these burdens because they photograph both opposite-sex and same-sex weddings and promote their willingness to do so. Compl. ¶¶ 222–27; Decl. ¶¶ 306–29. So these photographers can operate, adopt policies, convey their beliefs, promote their services, and interact with clients much more efficiently and freely than Bob while competing to photograph the same opposite-sex weddings as Bob. This differential treatment gives these competitors an advantage and Bob one more basis for standing to challenge Virginia's law.[6]

---

[6] Courts have not confined the competitor standing doctrine solely to economic injuries either. *See Buchanan v. Fed. Election Comm'n*, 112 F. Supp. 2d 58, 63 (D.D.C. 2000) ("Courts within this Circuit and elsewhere have expanded the competitor standing doctrine to the political arena, recognizing that political actors may bring suit when they are competitively disadvantaged by

II.     **Bob states a plausible claim that Virginia's law compels and restricts his protected speech, compels him to participate in religious ceremonies, and regulates a hybrid of rights.**

Bob has shown elsewhere that he will likely prevail on his free-speech claim, his claim against compelled participation in religious ceremonies, and his hybrid-rights claim. MPI Reply 2–20. For the same reasons, Bob should prevail under the more lenient motion-to-dismiss standard where all his factual allegations should be taken as true and any facts outside the complaint ignored. *Iqbal*, 556 U.S. at 678 (2009) ("The plausibility standard is not akin to a 'probability requirement.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

For example, Bob has alleged his desire to shape the public debate using his photographs and website. Compl. ¶¶ 37–42. Bob has also alleged that he posts his photographs on his website with his name, his url, and his picture. Compl. ¶¶ 72, 85; Decl. ¶¶ 15–16. These allegations support a plausible inference that Bob is speaking, that he is speaking a message of public concern, that others would understand Bob to be speaking, and that others would associate Virginia's compelled message with Bob. Bob need not show the latter three points to prove his claims (MPI Reply § 1.B). But Bob has *still* alleged enough facts at this stage to prove these unnecessary points anyway. *See Brown v. Gov't of D.C.*, 390 F. Supp. 3d 114, 123 (D.D.C. 2019) ("[C]ourts typically do not reach the *merits* of a First Amendment challenge at the motion-to-dismiss stage.").

Along with the claims briefed in the MPI Reply, the complaint alleges another free speech-theory: that Virginia interprets and applies its law selectively based on content and viewpoint. In amicus briefs, the Attorney General has taken the position that creative

---

government action."); *Nelson v. Warner*, No. CV 3:19-0898, 2020 WL 4004224, at *3 (S.D.W. Va. July 15, 2020) (collecting cases of competitor standing in political election challenges).

professionals (cake designers) can decline to create speech (design a cake) condemning same-sex weddings because of secular objections, but creative professionals cannot decline to create speech (design a cake) celebrating same-sex weddings because of religious objections. Compl. ¶ 218. This raises the plausible inference that the Attorney General interprets and applies Virginia's law the same way.

But the U.S. Supreme Court condemned this approach in *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Commission* because this "difference in treatment" was "based on the government's own assessment of offensiveness." 138 S. Ct. 1719, 1731 (2018). And that in turn violated First Amendment principles requiring content and viewpoint neutrality. *Id.* (citing *Matal v. Tam*, 137 S. Ct. 1744, 1762–64 (2017) (opinion of Alito, J.), a viewpoint-discrimination case, to say it is not "the role of the State or its officials to prescribe what shall be offensive"). The same logic applies to Virginia's enforcement of its law. Virginia cannot allow some speakers to avoid speaking certain viewpoints offensive to them but force Bob to speak viewpoints offensive to him. This differential treatment alleges a plausible First Amendment claim.

## III.     Bob states a plausible First Amendment claim that Virginia's law compels him to expressively associate and restricts his expressive association.

Because Bob seeks to protect his First Amendment rights, he has "a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984). And the freedom to associate "plainly presupposes a freedom not to associate." *Id.* at 623.

To show compelled association, a plaintiff must show (1) the group "engage[s] in some form of expression"; (2) the "forced inclusion … affects in a significant way the group's ability

21

to advocate public or private viewpoints"; and (3) this application fails strict scrutiny. *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000). Bob satisfies each of these factors.

First, Bob engages in expression as discussed thoroughly above. He wants to communicate a message celebrating marriage between a man and woman by creating and posting photographs honoring this concept of marriage and by discussing his desire to do so with others. *See supra* § I.A; MPI 9 (explaining this desire). This is protected speech. *Id*. And this Court must "give deference to [Bob's] assertions regarding the nature of [his] expression." *Dale*, 530 U.S. at 653.

Second, the law infringes Bob's speech in two distinct ways: (i) forcing him to join with others who want to send messages he disagrees with, and (ii) forcing him to associate with messages he disagrees with. Here too, this Court should "give deference to [Bob's] view of what would impair [his] expression." *Id*. at 653.

Take the first infringement. Bob wants to create photographs celebrating marriage between a man and a woman, but Virginia's law requires Bob to join together with others who want to create and convey different and conflicting messages—messages celebrating same-sex weddings. Virginia even concedes this. *See* MTD 15–17 ("as the photographs in plaintiff's brief show, *it is the couple and their guests who are celebrating*…a couple getting married is *celebrating their wedding*") (emphasis in original).

This compulsion would in turn "impair" Bob's ability to express his different religious views about marriage, "and only those views." *Dale*, 530 U.S. at 648. Indeed, if a gay scoutmaster's mere presence affected the Boy Scout's ability to "not promote homosexual conduct," then Virginia's law must affect Bob's ability to promote his particular view on marriage by forcing him to join with others to actually create and distribute speech conveying a

different and opposing view. *Id*. at 654 (cleaned up). In other words, "to the extent [Bob's] choice of [clients based on the message requested] affects the expressive content of [his photography], the First Amendment protects that choice." *McDermott v. Ampersand Pub., LLC*, 593 F.3d 950, 962 (9th Cir. 2010) (newspaper could not be forced to hire certain reporters and editors because it was "bound to affect what gets published"); *see also Cal. Democratic Party v. Jones*, 530 U.S. 567, 581–82 (2000) (proposition allowing unaffiliated voters to vote in political party's primary "adulterate[d] their candidate-selection process … by opening it up to persons wholly unaffiliated with the party" and thereby had "the likely outcome—indeed, in this case the intended outcome—of changing the parties' message").

As to the second impediment, Virginia's law forces Bob to associate himself with messages he disagrees with. While this type of association is not necessary to prove a compelled speech claim or other types of compelled association (MPI Reply 7–8), it is enough to establish an expressive-association claim here. *See Johanns v. Livestock Mktg. Ass'n*, 544 U.S. 550, 564–66 (2005) (acknowledging that beef producers might be able to establish First Amendment violation when forced to pay for beef advertisements they disagree with "if it were established, that is, that individual beef advertisements were attributed to respondents"); *id.* at 568, (Thomas, J., concurring) (going further and saying "if the advertisements associated their generic pro-beef message with either the individual or organization respondents, then respondents would have a valid as-applied First Amendment challenge"); *Charter v. U.S. Dep't of Agric.*, 412 F.3d 1017, 1020 (9th Cir. 2005)) (applying *Johanns* and remanding for district court to determine whether beef producers had viable speech attribution claim when forced to pay for beef advertisements they disagreed with).

Bob has plausibly alleged enough facts to suggest this association. Whenever Bob photographs a wedding, he physically attends and participates in the wedding, witnesses the couple's union, and interacts with and encourages the wedding party, the couple, the couple's family, and their friends. Compl. ¶¶ 108–11. Bob then posts the wedding photographs on his website where "'Bob Updegrove Photography' is always displayed at the top of each page and every [photography] gallery." *Id*. at ¶ 85; ¶¶ 72–74. Like Bob, other wedding photographers also do this "to associate their business with their photographs and photographic style, and to allow the couple to associate with their business." *Id*. at 95. These allegations suggest that Bob's wedding clients, their friends and family, and the general public would associate the message of Bob's photography with Bob. And that association would apply if Bob were forced to create and display photographs celebrating same-sex weddings. That in turn would affect and undermine Bob's efforts to convey a different message through his photographs, website, and client communications.

And this effect cannot survive strict scrutiny, the third *Dale* factor. For the same reasons Virginia cannot justify compelling Bob's speech or restricting that speech, Virginia cannot justify compelling his expressive association and undermining his efforts to convey his particular message about marriage. *See* MPI § V; MPI Reply § V (explaining strict scrutiny point). So for these reasons, Bob has adequately pleaded an expressive-association claim.

**IV.   Bob states plausible First Amendment claims that Virginia's law infringes on his religious exercise.**

Bob states plausible Free Exercise claims in two ways. Virginia's law is not generally neutral and applicable, and it contradicts our history and tradition of protecting religious exercise.

Starting with the first, a law is not neutral or generally applicable if its object is to "infringe upon or restrict practices because of their religious motivation," or if it selectively burdens only religious practices. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532–33, 542–43 (1993). The government also fails this standard if it puts "in place a system of individual exemptions," allowing it to treat secular conduct more favorably than religiously motivated conduct. *Emp't Div., Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 884 (1990) (explaining that "good cause" standard considered in *Sherbert v. Verner*, 374 U.S. 398 (1963), for determining unemployment eligibility, "created a mechanism for individualized exemptions," meriting strict scrutiny (citation omitted)); *see Blackhawk v. Pennsylvania*, 381 F.3d 202, 209 (3d Cir. 2004) (Alito, J.) ("[A] law must satisfy strict scrutiny if it permits individualized, discretionary exemptions because such a regime creates the opportunity for a facially neutral and generally applicable standard to be applied in practice in a way that discriminates against religiously motivated conduct."). And importantly, these requirements go beyond a law's text, which "is not determinative." *Lukumi*, 508 U.S. at 534. The First Amendment forbids even "subtle departures from neutrality." *Id.* at 534.

Virginia's actions here go well beyond subtle. First, Virginia has selectively burdened religious speakers like Bob and created a system of individualized assessments by forcing Bob to speak messages inconsistent with his religious beliefs while allowing secular speakers to decline to speak messages inconsistent with their secular beliefs. *Compare supra* § II (describing Attorney General's position that religious speakers must create speech despite religious objections, but other speakers need not create speech if they have secular objections) *with Lukumi*, 508 U.S. at 537 ("The problem … is the interpretation given to the ordinance by respondent….").

But Virginia "cannot in a selective manner impose burdens only on conduct motivated by religious belief." *Lukumi*, 508 U.S. at 543. Either Virginia must interpret and then enforce its law the same way against everyone (which would still compel and restrict speech), or else extend the same protections to people like Bob. Virginia cannot take its chosen route: create a system where it gives favorable treatment to secular speakers and "refuse[s] to extend [a system of exemptions] to cases of 'religious hardship' without compelling reason." *Id.* at 537 (quoting *Smith*, 494 U.S. at 884); *see also Masterpiece*, 138 S. Ct. at 1730–31 (concluding that similar practice violated Free Exercise Clause); *id.* at 1734–40 (Gorsuch, J., concurring) (explaining that similar system could not possibly comply with Free Exercise requirements).

Second, Virginia has shown hostility toward Bob's beliefs as evidenced by religiously hostile statements made by those passing Virginia's law. These statements are relevant. *Masterpiece*, 138 S. Ct. at 1731 (identifying relevant factors as "the historical background of the decision under challenge, the specific series of events leading to the enactment or official policy in question, and the legislative or administrative history, including contemporaneous statements made by members of the decisionmaking body" (citing *Lukumi*, 508 U.S. at 540)); *Lukumi*, 508 U.S. at 540–41 (Kennedy, J., joined by Stevens) (assessing legislator statements to assess neutrality); *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cty.*, 915 F.3d 256, 263–65 (4th Cir. 2019) (assessing statements by community members that influenced government zoning process to assess neutrality) *as amended* (Feb. 25, 2019).

For example, legislators debating Virginia's law or similar laws in recent years made negative statements about those who believe marriage is between one man and one woman and want to live or operate a business consistent with those beliefs. Compl. ¶¶ 236–57. Legislators

26

also made statements that they intended to deter people like Bob from exercising their constitutional freedoms through the law's penalty provisions. *Id.* ¶ 215.

In substance, these statements mimic those in *Masterpiece* where the Supreme Court condemned officials' statements criticizing a cake designer's religious views in favor of marriage between a man and a woman. *Compare Masterpiece*, 138 S. Ct. at 1729 (official saying "[i]f a businessman wants to do business in the state and he's got an issue with the—the law's impacting his personal belief system, he needs to look at being able to compromise" (cleaned up)) *and id.* (saying the baker "can believe 'what he wants to believe,' but cannot act on his religious beliefs 'if he decides to do business in the state'") *with* Compl. ¶ 215 ("If you don't want to be subject to unlimited punitive damages, don't discriminate on the basis of sexual orientation.") *and id.* at ¶ 247 ("[I]f you are a public organization, your doors are supposed to be open to everyone in the public. Now I don't know what type of Christianity you come from, but the type of Christianity I come from, the Apostle Paul said 'Try with everything within you to live peaceably with all men.'") *and id.* at ¶ 248 (saying "religious bigotry is bad" in reference to religious views on sexual ethics and sexual orientation). Like the statements in *Masterpiece*, the statements here show a "lack of due consideration for [Bob's] free exercise rights and the dilemma he face[s]." *Masterpiece*, 138 S. Ct. at 1729.[7]

Setting these other problems aside, Virginia's law also deserves strict scrutiny for burdening Bob's religious exercise in ways inconsistent with our nation's history and tradition. Laws that do this must always overcome strict scrutiny. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 190 (2012) ("The contention that *Smith* forecloses

---

[7] To be clear, Bob seeks only as-applied relief for all his claims except the religious hostility theory. For this theory, Bob seeks both facial and as-applied relief. *Lukumi*, 508 U.S. at 547 (finding religious hostility rendered statute void).

recognition of" well-established historical precepts "rooted in the Religion Clauses has no

merit."). And we know burdening Bob falls outside this tradition because *Smith* itself

recognized the historical anomaly of compelling and silencing religious speakers. *See supra* § II

(discussing hybrid-rights claims); MPI § IV. To the extent that courts interprets *Smith*

differently, *Smith* should be overruled. While this Court cannot do that, Bob wishes to preserve

this issue for appeal, especially because the Supreme Court is currently considering whether to

overturn *Smith. See* Pet. for a Writ of Cert., *Fulton v. City of Philadelphia*, No. 19-123, 2019

WL 3380520, at *i (July 22, 2019) (stating second question presented as "[w]hether

*Employment Division v. Smith* should be revisited?"); *Fulton v. City of Philadelphia*, 140 S. Ct.

1104 (2020)) (granting certiorari).

## <u>Conclusion</u>

While Virginia wants to escape scrutiny of its law until another day, its law harms

people like Bob right now. "[E]quity ministers to the vigilant, not to those who sleep upon their

rights." *Perry v. Judd*, 471 F. App'x 219, 224 (4th Cir. 2012) (citation omitted). The fact that

Bob seeks clarity now before enforcement should count for him, not against. And Bob has

shown that his claims are much more than plausible. Federal courts have uniformly held that

laws like Virginia's transgress fundamental freedoms when they compel and restrict speech or

target religious exercise. So Bob asks this Court to deny Virginia's motion to dismiss in

its entirety.

Respectfully submitted this 14th day of December, 2020.

By: *s/ C. Douglas Welty*

Jonathan A. Scruggs                C. Douglas Welty
Arizona Bar No. 030505             Virginia Bar No. 29480
**Alliance Defending Freedom**        **C. Douglas Welty PLC**

15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
(480) 444-0028 (facsimile)
jscruggs@ADFlegal.org

David A. Cortman
Georgia Bar No. 188810
**Alliance Defending Freedom**
1000 Hurricane Shoals Rd. NE
Ste. D-1100
Lawrenceville, GA 30043
(770) 339-0774
(770) 339-6744 (facsimile)
dcortman@ADFlegal.org

Johannes S. Widmalm-Delphonse
Minnesota Bar No. 396303
**Alliance Defending Freedom**
20116 Ashbrook Place, Suite 250
Ashburn, VA 20147
(571) 707-4655
(571) 707-4656 (facsimile)
jwidmalmdelphonse@ADFlegal.org

2111 Wilson Boulevard
Suite 800
Arlington, Virginia 22201
(703) 276-0114
(844) 456-7800 (facsimile)
cdwelty@weltyblair.com

ATTORNEYS FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on the 14th day of December, 2020, I electronically filed the above paper with the Clerk of Court using the CM/ECF system, which automatically sent an electronic notification to the attorneys of record:

Mark R. Herring, Attorney General
Commonwealth of Virginia
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219

R. Thomas Payne, II, Director
Civil Rights Unit/SAAG Fair Housing
Division of Human Rights and Fair Housing
Office of the Attorney General
202 North Ninth Street
Richmond, VA 23219

/s/ *C. Douglas Welty*
C. Douglas Welty
*Attorney for Plaintiffs*

30