**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

ROBERT UPDEGROVE *et al.*,            )
                                      )
      Plaintiffs,            )
                                      )
      v.            )            Civil Action No. 1:20-cv-01141-CMH-JFA
                                      )
MARK R. HERRING *et al.*,            )
                                      )
      Defendants.            )


**<u>DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

Mark R. Herring
  *Attorney General*

Erin B. Ashwell (VSB No. 79538)
  *Chief Deputy Attorney General*

Samuel T. Towell (VSB No. 71512)
  *Deputy Attorney General*

Toby J. Heytens (VSB No. 90788)
  *Solicitor General*

Martine E. Cicconi (VSB No. 94542)
Michelle S. Kallen (VSB No. 93286)
  *Deputy Solicitors General*

Jessica Merry Samuels (VSB No. 89537)
  *Assistant Solicitor General*

Kendall T. Burchard (VSB No. 95710)
  *John Marshall Fellow*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-6835 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................... 1

ARGUMENT ...................................................................................................................... 1

   I.    Plaintiff's pre-enforcement challenge does not satisfy Article III's case or controversy requirement ............................................................................... 2

   II.   Plaintiff's free speech claim fails as a matter of law ........................................ 5

      A.   Prohibiting discrimination regulates conduct, not speech ......................... 6

      B.   The Virginia Values Act does not require plaintiff to adopt or convey any message as his own ........................................................................ 9

      C.   Speech incidental to lawful regulation of conduct has never been protected by the First Amendment ........................................................... 12

      D.   Plaintiff's freedom of association claim also fails ................................... 13

   III.  Plaintiff's religious freedom claim fails as a matter of law ............................. 14

      A.   The Virginia Values Act is neutral and generally applicable ................... 14

      B.   Plaintiff's other theories are not cognizable ........................................... 17

   IV.  The Virginia Values Act satisfies strict scrutiny .............................................. 18

CONCLUSION ................................................................................................................... 20

CERTIFICATE OF SERVICE ........................................................................................... 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*303 Creative LLC v. Elenis*,
  385 F. Supp. 3d 1147 (D. Colo. 2019) ................................................................. 18

*Abbott v. Pastides*,
  900 F.3d 160 (4th Cir. 2018) .................................................................................. 4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................... 15

*Babbitt v. United Farm Workers Nat. Union*,
  442 U.S. 289 (1979) ............................................................................................... 3

*Billups v. City of Charleston, S.C.*,
  961 F.3d 673 (4th Cir. 2020) .................................................................................. 7

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ........................................................................................ 13, 14

*Burson v. Freeman*,
  504 U.S. 191 (1992) ............................................................................................... 18

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*,
  508 U.S. 520 (1993) ......................................................................................... 15, 16

*Cornerstone Bible Church v. City of Hastings*,
  948 F.2d 464 (8th Cir. 1991) ................................................................................. 18

*Elane Photography, LLC v. Willock*,
  309 P.3d 53 (N.M. 2013) .................................................................................... 6, 18

*Employment Div., Dep't of Human Res. of Oregon v. Smith*,
  494 U.S. 872 (1990) ......................................................................................... 14, 15

*Hurley v. Irish-American Gay, Lesbian and Bisexual Grp. of Boston*,
  515 U.S. 557 (1995) ......................................................................................... 10, 14

*In re U.S. Catholic Conference*,
  885 F.2d 1020 (2d Cir. 1989) ................................................................................. 4

*Kenny v. Wilson*,
  885 F.3d 280 (4th Cir. 2018) .................................................................................. 4

*Maryland Shall Issue, Inc. v. Hogan*,
  971 F.3d 199 (4th Cir. 2020) .................................................................................. 4

*Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*,
  138 S. Ct. 1719 (2018) ............................................................................ 7, 8, 16, 17

*MD Pharm., Inc. v. Drug Enforcement Admin.*,
 133 F.3d 8 (D.C. Cir. 1998) ........................................................................ 4

*Miami Herald Publ'g Co. v. Tornillo*,
 418 U.S. 241 (1974) .................................................................................. 10

*Mink v. Suthers*,
 482 F.3d 1244 (10th Cir. 2007) ................................................................... 3

*Mobil Oil Corp. v. Attorney General of Va.*,
 940 F.2d 73 (4th Cir. 1991) ........................................................................ 4

*National Park Hospitality Ass'n v. Department of Interior*,
 538 U.S. 803 (2003) .................................................................................... 5

*North Carolina Right to Life, Inc. v. Bartlett*,
 168 F.3d 705 (4th Cir. 1999) ....................................................................... 4

*Pacific Gas & Elec. Co. v. Public Utilities Comm'n of Cal.*,
 475 U.S. 1 (1986) ...................................................................................... 10

*People for the Ethical Treatment of Animals, Inc. v. Stein*,
 737 Fed. Appx. 122 (4th Cir. 2018) ............................................................. 4

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations*,
 413 U.S. 376 (1973) ............................................................................. 10, 12

*Roberts v. United States Jaycees*,
 468 U.S. 609 (1984) .................................................................. 6, 7, 13, 19

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*,
 547 U.S. 47 (2006) ............................................................................. passim

*Sorrell v. IMS Health Inc.*,
 564 U.S. 552 (2011) ................................................................................... 12

*Spokeo, Inc. v. Robins*,
 136 S. Ct. 1540 (2016) ................................................................................ 5

*State v. Arlene's Flowers, Inc.*,
 193 Wash. 2d 469 (2019) ................................................................ 13, 18, 19

*Susan B. Anthony List v. Driehaus*,
 573 U.S. 149 (2014) ............................................................................ 2, 3, 4

*Telescope Media Grp. v. Lucero*,
 936 F.3d 740 (8th Cir. 2019) .................................................................. 7, 17

*Trustgard Ins. Co. v. Collins*,
 942 F.3d 195 (4th Cir. 2019) ....................................................................... 5

*United States v. O'Brien*,
 391 U.S. 367 (1968) .................................................................................... 6

*West Virginia State Bd. of Educ. v. Barnette*,
 319 U.S. 624 (1943) .................................................................................. 14

*Williamson v. Lee Optical of Okla., Inc.,*
   348 U.S. 483 (1955) ................................................................................................ 7

**Constitutional Provisions**

U.S. Const. art. III ................................................................................................. 2, 3, 4, 5

U.S. Const. amend. I .................................................................................................... passim

**Statutes**

Va. Code Ann. § 2.2-3900 *et seq* ........................................................................................ 19

Va. Code Ann. § 2.2-3904 ...................................................................................... 6, 15

**Other Materials**

Bob Updegrove, *A New Virginia Law is Censoring Artists Like Me,*
   Wash. Post (Oct. 30, 2020) ................................................................................. 11

## INTRODUCTION

In adopting the Virginia Values Act, the General Assembly did something that state and federal governments have done numerous times before: prohibit discrimination in the public sphere based on protected characteristics. Like other anti-discrimination laws that came before it, nothing in the Act requires covered persons to say anything, adopt any specific belief, or subscribe to any particular creed. Instead, the law simply—but critically—requires businesses that serve the public to serve all customers equally, regardless of who they are. Courts have long rejected constitutional challenges to such statutes, and this Court should do the same.

Plaintiff's litany of arguments to the contrary all suffer from the same fatal flaw: attempting to re-cast a rule regulating the *conduct* of businesses that choose to serve the public as a government-issued command to personally and publicly endorse a particular "Government-mandated pledge or motto." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 62 (2006). The Virginia Values Act does no such thing. The Act regulates what plaintiff must do, not what he must say, and there is no risk that the Act's equal-access rule will unduly interfere with any expressive message plaintiff wishes to convey on his own. The Act does not target anyone's religious beliefs and it has the same effect across the board. And even if the Act triggered strict scrutiny, it would survive in any event. For all of these reasons, plaintiff's claims fail as a matter of law, and the complaint should be dismissed in its entirety.

## ARGUMENT

The Virginia Values Act is no different than scores of other federal, state, and local anti-discrimination laws that have been adopted and upheld for more than a century. As a threshold matter, this Court lacks subject-matter jurisdiction over plaintiff's pre-enforcement challenge. See Part I, *infra*. The complaint also fails to allege any viable First Amendment claims because the Virginia Values Act neither regulates plaintiff's speech, see Part II, *infra*, nor targets or

1

disfavors any religious practice, see Part III, *infra*. In any event, plaintiff's claims also fail because the Virginia Values Act is narrowly tailored to achieve the compelling state interest in combatting discrimination. See Part IV, *infra*.

**I.     Plaintiff's pre-enforcement challenge does not satisfy Article III's case or controversy requirement**

For this Court to have jurisdiction, Article III requires that plaintiff have standing and that his claims are currently ripe. Where, as here, the challenged law has not yet been enforced against plaintiff, those two requirements present "the same question": whether "threatened enforcement [is] sufficiently imminent." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 & n.5 (2014) (*SBA List*). "Specifically," the Supreme Court has emphasized, a plaintiff raising a pre-enforcement challenge must show *both* "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute" *and* that "there exists a credible threat of prosecution thereunder." *Id.* at 159 (quotation marks and citation omitted).

1.     Plaintiff has failed to establish the "credible threat" element. See Dkt. 20 (Defs.' Mem.) 9–11. Most obviously, the complaint does not allege that plaintiff has ever been asked to photograph a same-sex wedding, nor does it provide any basis to think such a request is likely anytime soon.

Plaintiff responds that he can violate the Act without actually receiving or declining any such requests. See Dkt. 47 (Pl.'s Resp.) 14–15. But plaintiff does not allege—much less show— that the Division of Human Rights or the Office of the Attorney General has threatened his business with potential enforcement proceedings, and most of the evidence to which plaintiff points has nothing to do with the Virginia Values Act. For example, although plaintiff cites a series of amicus briefs that Virginia's Attorney General has joined in other cases, see Pl.'s Resp. 11 (citing Compl. ¶¶ 181, 185), none of those cases involved enforcement decisions regarding

this statute or plaintiff's business. Accord Defs.' Mem. 11 n.10. And despite insisting that "creative professionals" operate in a "seek-and-destroy environment" with respect to anti-discrimination laws, Pl.'s Resp. 16, plaintiff cites no evidence from Virginia in support of that heated claim. Indeed, the only evidence plaintiff cites that has anything to do with this case is a press release where Attorney General Mark R. Herring stated: "I will do everything in my power to defend the Virginia Values Act." Pl.'s Resp. 11. But a pledge by a state's Attorney General to defend a duly enacted state law against a constitutional challenge is hardly a threat—or even a suggestion—that administrative enforcement proceedings against a specific party may be imminent. In any event, "[i]t is not necessary for defendants to refute and eliminate all possible risk that the statute might be enforced to demonstrate a lack of a case or controversy." *Mink v. Suthers*, 482 F.3d 1244, 1255 (10th Cir. 2007) (quotation marks omitted).

2.      Having failed to demonstrate any "credible threat" of enforcement against him, plaintiff insists that no such showing is required. Instead, plaintiff asserts that all he needs to do to satisfy Article III is show that he is "covered by the statute." Pl.'s Resp. 10. The Supreme Court and the Fourth Circuit have held otherwise.

As early as 1979, the Supreme Court emphasized that a plaintiff bringing a pre-enforcement challenge must establish *both* that his intended conduct is "proscribed by a statute, *and* [that] there exists a credible threat of prosecution thereunder." *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 298 (1979) (emphasis added). The Court repeated the same language 35 years later, confirming there are two requirements, not one. See *SBA List*, 573 U.S. at 159. The Fourth Circuit has likewise emphasized that "a credible threat of enforcement is critical" to the standing analysis, even in the First Amendment context where a litigant asserts "self-censoring" or some kind of "chilling effect." *Abbott v. Pastides*, 900 F.3d 160, 176 (4th

3

Cir. 2018); accord *Maryland Shall Issue, Inc. v. Hogan*, 971 F.3d 199, 218 (4th Cir. 2020)

(rejecting pre-enforcement challenge where plaintiffs "offered no evidence to support a credible

threat of prosecution").[1]

There is a good reason why statutory coverage and a credible threat of enforcement are

separate requirements for establishing a justiciable pre-enforcement challenge. Accepting

plaintiff's suggestion to ignore the threatened enforcement prong would mean that *anyone* who

has a colorable claim that a statute *might* apply to them would be permitted to bring suit, thus

eviscerating Article III's strict limits on federal court authority to hear pre-enforcement

challenges. As explained above, that is not the law.

3.    Plaintiff's attempted analogy to "competitor standing" fares no better. See Pl.'s

Resp. 18–19. For one thing, none of the decisions plaintiff cites suggests that complying with

anti-discrimination laws can (or should) be understood to impose any kind of "efficien[cy]" or

"reputational" harm on a business relative to its competitors. *Id.* at 19.

There is, moreover, a fundamental disconnect between a theory of competitor standing,

on the one hand, and the "harm" plaintiff asserts and the relief he seeks on the merits. The whole

idea behind competitor standing is that the complaining party is *losing out on business* because

"the government has bestowed [an] assertedly illegal benefit" on other participants in the same

market. *In re U.S. Catholic Conference*, 885 F.2d 1020, 1029 (2d Cir. 1989); see also *MD*

*Pharm., Inc. v. Drug Enforcement Admin.*, 133 F.3d 8, 11 (D.C. Cir. 1998) ("We have previously

---

[1] The cases on which plaintiff relies either pre-date the Supreme Court's decision in *SBA List*, see *North Carolina Right to Life, Inc. v. Bartlett*, 168 F.3d 705, 711 (4th Cir. 1999); *Mobil Oil Corp. v. Attorney General of Va.*, 940 F.2d 73, 76 (4th Cir. 1991); or involved relevant past enforcement action, see *Kenny v. Wilson*, 885 F.3d 280, 289 (4th Cir. 2018) (plaintiffs "ha[d] been prosecuted under the laws in the past"), or prior conduct by the plaintiffs, see *People for the Ethical Treatment of Animals, Inc. v. Stein*, 737 Fed. Appx. 122, 130 (4th Cir. 2018) (plaintiffs "ha[d] in the past conducted" the type of investigations at which the relevant statute "was specifically targeted").

held that increased competition represents a cognizable Article III injury."). But plaintiff does not assert that the Virginia Values Act has caused him to lose business—to the contrary, the point of this suit is that plaintiff wishes to do *less* business than the law requires. See, *e.g.*, Compl. ¶ 130 ("[I]t is [plaintiff]'s pattern and practice to decline requests to create photographs that violate his religious beliefs."). And the relief that plaintiff seeks—to be exempted from a law that otherwise applies to all public businesses—is inconsistent with a theory of standing that is supposedly premised on leveling the playing field vis-à-vis competitors.

4.      Requiring a plaintiff to establish a credible threat of enforcement to bring a pre-enforcement challenge is more than a pleading technicality. Adjudicating claims that are unripe or where the plaintiff has experienced no injury-in-fact would reach beyond "a properly judicial role," *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), and risk "entangling [courts] in abstract disagreements," *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 807 (2003). More specifically, where a law has never been—and may never be—enforced against plaintiff, his request for a judicially granted "exemption" from that law (Compl. ¶ 284) seeks what would effectively be an advisory opinion on hypothetical or abstract facts, a step that would contravene "one of the most long-standing and well-settled jurisdictional rules." *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 200 (4th Cir. 2019).

## II.     Plaintiff's free speech claim fails as a matter of law

Plaintiff's free speech arguments confuse what the Virginia Values Act does (prohibit public-facing businesses from discriminating against certain groups by refusing to serve them) with something it does not (require plaintiff to adopt or profess any particular message or belief of his own). But the Act regulates what plaintiff does, not what he must believe or say. And that distinction makes all the difference.

### A.      Prohibiting discrimination regulates conduct, not speech

Although the impact of the law is no doubt significant, the way the Virginia Values Act works is simple. As of July 1, 2020, any "business[]" that "offer[s] or hold[s] out to the general public goods[ or] services" may not "refuse . . . or deny any individual . . . any of the . . . services . . . made available" by that business "on the basis of" several protected characteristics, including "race, . . . religion, . . . sex, . . . [or] sexual orientation." Va. Code Ann. § 2.2-3904.

1.      The statutory text makes clear that "the only choice regulated" by the Virginia Values Act is plaintiff's "choice of clients," not his "editorial judgment" or system of beliefs. *Elane Photography, LLC v. Willock*, 309 P.3d 53, 67 (N.M. 2013). The only legal requirement that the Act imposes on plaintiff's "for-profit photography business that offers and provides photography services to the general public on a commission basis," Compl. ¶ 18, is that it may not refuse to provide LGBT individuals the same *services* it provides others. Accord Pl.'s Resp. 5 (agreeing that the Act requires plaintiff to serve same-sex couples in the same way that he serves opposite-sex couples). For that reason, the Act regulates what plaintiff "must *do*," not what he "may or may not *say*." *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006) (*FAIR*). And, under well-established precedent, that sort of regulation does not implicate—much less violate—the First Amendment. Accord *Roberts v. United States Jaycees*, 468 U.S. 609, 634 (1984) (*Jaycees*) (O'Connor, J., concurring) ("A shopkeeper has no constitutional right to deal only with persons of one sex.").

Plaintiff's contrary argument ignores the fundamental distinction between forbidding discriminatory conduct and compelling speech. See Dkt. 46 (Pl.'s Reply) 2–4. But courts have long recognized the importance of the conduct/speech distinction, see, *e.g.*, *United States v. O'Brien*, 391 U.S. 367, 376 (1968), and state regulation of commercial conduct in the public marketplace is neither new nor controversial, see *Williamson v. Lee Optical of Okla., Inc.*, 348

U.S. 483, 491 (1955); see also *Masterpiece Cakeshop, Ltd. v. Colorado Civil Rights Comm'n*, 138 S. Ct. 1719, 1728 (2018) ("It is unexceptional that Colorado law can protect gay persons, just as it can protect other classes of individuals, in acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public.").[2]

The categorical way that the Act operates also underscores why its prohibition on discriminatory conduct applies the same way regardless of viewpoint. As with the Minnesota law upheld in *Jaycees*, the Virginia Values Act "[o]n its face . . . does not distinguish between prohibited and permitted activity on the basis of viewpoint," nor does it "license enforcement authorities to administer the statute on the basis of such constitutionally impermissible criteria." 468 U.S. at 623; see also Pl.'s Reply 12 (agreeing that *Jaycees* concluded that the state anti-discrimination law at issue "was facially content-neutral" (emphasis omitted)). Plaintiff is therefore wrong that the Act "changes the content of [his] speech" and "requires access only to certain viewpoints." *Id.* Instead, the anti-discrimination rule applies to all public accommodations irrespective of the beliefs or viewpoints a given business's owners may hold.[3]

2.      Plaintiff responds that content-neutrality on the face of the Virginia Values Act is irrelevant because he brings an as-applied challenge. Pl.'s Reply 2, 12–13. According to plaintiff, a "facially content-neutral" law may nonetheless "act[] as a content-based regulation as applied to" a particular plaintiff. *Id.* at 12–13 (emphases omitted).

That simply cannot be right. To be sure, it would not be constitutional to *selectively enforce* a facially neutral law on the basis of content or viewpoint. But plaintiff is not

---

[2] *Billups v. City of Charleston, S.C.*, 961 F.3d 673 (4th Cir. 2020), is not to the contrary because the regulation there "completely prohibit[ed]" an expressive activity and therefore was not "a restriction on economic activity that incidentally burdens speech." *Id.* at 683.

[3] Plaintiff attempts to distinguish *Jaycees* based on the Eighth Circuit's sharply divided decision in *Telescope Media Grp. v. Lucero*, 936 F.3d 740 (8th Cir. 2019). See Pl.'s Reply 12. That decision, of course, is not binding here.

challenging a pattern of enforcement—he is seeking an exemption from the Act itself. And although the determination of whether a law unconstitutionally infringes on an individual's freedom of speech necessarily looks to the text of the statute to understand how the law affects that individual, that context-specific analysis (which is necessary to any constitutional claim) does not somehow transform a content-neutral law into one that is content-based. Indeed, adopting plaintiff's theory would mean that *every* law is content-based because *all* laws apply to different people in different situations.[4]

3.      Plaintiff also tries to bring himself within the Free Speech Clause's protection by insisting he wishes to refuse service to customers based on the "message" their proposed photographs would convey rather than their "status" as members of a protected group. Pl.'s Reply 10. But there is no way around the fact that plaintiff's preferred "practice" of "declin[ing] any photography requests celebrating . . . same-sex engagements or weddings" discriminates based on *status*. Compl. ¶ 119. Even if plaintiff would accept a request by "a gay wedding planner" to "photograph someone's opposite-sex wedding," or agree to "serve" a "lesbian, bisexual, or pansexual woman [who] asked [plaintiff] to photograph her wedding to a man," Pl.'s Reply 10, his refusal to photograph same-sex weddings still discriminates against same-sex couples who are consistently and intentionally turned away. See *Masterpiece Cakeshop*, 138 S. Ct. at 1727 (describing "community-wide stigma" that would "result[ ]" if "a long list of persons who provide goods and services for marriages and weddings . . . refuse[d] to do so for gay persons"). The fact that plaintiff may not discriminate against *all* LGBT individuals in *all* contexts does not mean that he does not do so in any context, in the same way that a hotel that

---

[4] If anyone has "confuse[d] facial and as-applied challenges," Pl.'s Reply 2, it is plaintiff. Although plaintiff insists that the Act should be analyzed "as applied to [his] photographs," *id.* at 13, he later argues that the entire statute is "void," Pl.'s Resp. 27 n.7. Further confusing matters, the complaint seeks relief both "facially" and "as applied." Compl. at 45.

did not allow Black guests could not raise as a defense the fact that it would accept reservations and payments from Black individuals for stays by white guests.

**B.     The Virginia Values Act does not require plaintiff to adopt or convey any message as his own**

Seeking to overcome the critical difference between conduct and speech, plaintiff contends that "his photography is speech" and that the Virginia Values Act "forces him to create and post speech he disagrees with" by requiring that he provide the same event photography services to same-sex couples that he provides to opposite-sex couples. Pl.'s Reply 2. Although photographs certainly have expressive qualities, plaintiff's argument ignores several crucial aspects of First Amendment jurisprudence.

1.     Unlike core compelled speech cases, the Virginia Values Act does not "dictate the content of [plaintiff's] speech at all" or announce "a Government-mandated pledge or motto that [plaintiff] must endorse." *FAIR*, 547 U.S. at 62. Instead, all the Act requires is that businesses offer their services—in this case, wedding photography—to all customers on an equal basis. As the Supreme Court explained in *FAIR*, this type of equal access requirement is "a far cry from . . . forcing a student to pledge allegiance, or forcing a Jehovah's Witness to display the motto 'Live Free or Die.'" *Id.* For that reason, most of the compelled-speech cases on which plaintiff relies have no application to the facts of this case. Contra Pl.'s Reply 2 (asserting that the Act compels plaintiff "to utter what is not in his mind").

2.     Plaintiff is also wrong because *his own* expression is not affected by stating that he must provide the same photography services to same-sex couples that he provides to opposite-sex couples. The Supreme Court rejected a similar argument in *FAIR* by law schools that did not wish to host military recruiters, explaining that "compelled-speech violation[s]" typically

"result[] from the fact that the complaining speaker's own message [i]s affected by the speech [he is] forced to accommodate." 547 U.S. at 63.

a.      This relationship between speaker and speech shows why *Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*, 515 U.S. 557 (1995), and the newspaper cases came out the way they did. In *FAIR*, the Court highlighted "[t]he expressive nature of a parade" as "central" to the Court's holding in *Hurley*. See *FAIR*, 547 U.S. at 63. "[B]ecause every participating unit affects the message conveyed by the parade's private organizers," the Court explained, "a law dictating that a particular group must be included in the parade alters the expressive content of the parade." *Id.* (citing *Hurley*, 515 U.S. at 572–73); accord *Hurley*, 515 U.S. at 573 (stating that "the [parade] sponsors' speech itself" was "declar[ed] . . . to be the public accommodation").

The same standard applies to newspapers, although sometimes with a different result. The "right-of-reply" statute at issue in *Miami Herald Publishing Co. v. Tornillo*, 418 U.S. 241 (1974), "infringed the newspaper editors' freedom of speech by altering the message the paper wished to express," *FAIR*, 547 U.S. at 64, just as the mandatory inclusion a of a third-party newsletter in a utility's regular mailing at issue in *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1 (1986), "interfered with the utility's ability to communicate its own message." *FAIR*, 547 U.S. at 64. In contrast—and similar to this case—in *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376 (1973), the Supreme Court upheld a rule barring a newspaper from publishing help-wanted ads in sex-specific columns, in part because the restriction had no effect on the newspaper's own message and its editorial decisions about what to publish and what to leave out. See *id.* at 391.

b.      Here, even assuming that photographs may constitute speech as a general matter, a particular couple's "message" is not attributable to plaintiff any more than it would be to a caterer or lighting designer. Just like other service professionals, wedding vendors serve many clients in many different contexts, and no one reasonably associates the views of every one of those clients with the vendor itself.[5] Providing wedding photography services does not in any way "suggest[] that [plaintiff] agree[s] with any speech" by the couples he serves, and nothing in the Virginia Values Act "restricts what [plaintiff] may say"—in conversations, editorials, billboards, or otherwise—about the morality or permissibility of same-sex marriage. *FAIR*, 547 U.S. at 65.[6] Because there is no significant risk of "interference with [plaintiff]'s desired message," the Virginia Values Act does not infringe plaintiff's free speech rights. *Id.* at 64.

Plaintiff's contrary arguments are not limited to Bob Updegrove photography or plaintiff's specific views. To take just one example, under plaintiff's view that his commercial conduct is necessarily his own expression, a photographer who regularly documents important milestones such as high school graduations could refuse to photograph female graduates based on the sincerely held religious belief that women are meant to only work in the home and therefore should not be educated. On plaintiff's theory, such discrimination would be exempt from a public accommodations law under the First Amendment because photographing female graduates would—according to plaintiff—"forc[e]" the photographer "to personally communicate messages he disagrees with." Pl.'s Reply 5. Once again, that cannot be right.

_____

[5] Plaintiff's theory also rests on the deeply flawed assumption that all same-sex weddings are inherently political statements or celebrations of the concept of "same-sex marriage" itself. Regardless of a given couple's genders or sexual orientation, a wedding ceremony celebrates the union of two individuals, not the lawfulness or propriety of same-sex (or opposite-sex) marriage.

[6] See, *e.g.*, Bob Updegrove, *A New Virginia Law is Censoring Artists Like Me*, Wash. Post (Oct. 30, 2020), https://www.washingtonpost.com/opinions/local-opinions/a-new-virginia-law-is-censoring-artists-like-me/2020/10/27/bb2fe248-117d-11eb-ba42-ec6a580836ed_story.html.

**C.     Speech incidental to lawful regulation of conduct has never been protected by the First Amendment**

It is well-accepted that "restrictions directed at commerce or conduct" are constitutional even if they "impos[e] incidental burdens on speech." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). "[W]hen [a] commercial activity itself is illegal," the First Amendment permits restrictions of speech that are "incidental to a valid limitation on economic activity." *Pittsburgh Press*, 413 U.S. at 389. For example, "a newspaper constitutionally could be forbidden to publish a want ad proposing a sale of narcotics or soliciting prostitutes," *id.* at 388, and anti-discrimination laws do not regulate an employer's speech just because they would "require an employer to take down a sign reading 'White Applicants Only,'" *FAIR*, 547 U.S. at 62.

This clear rule is likely why plaintiff's arguments under the "Publication Clause" of the Virginia Values Act collapse into his arguments about the "Accommodations Clause." Indeed, plaintiff specifically concedes this point in his opposition brief by stating that "in deciding whether [plaintiff] can constitutionally adopt or distribute his desired policy declining to create photographs celebrating same-sex weddings, this Court will need to determine whether [plaintiff] can constitutionally decline to create these photographs." Pl.'s Resp. 15.

Consistent with that concession, plaintiff does not separately analyze his claims under the Publication and Accommodations Clauses. Instead, plaintiff asserts that his Publication Clause claim is viable *because* his desire "to exercise control over his photography" by declining to serve same-sex couples "is protected speech." Pl.'s Reply 14. But that is precisely the same argument plaintiff advances under the Accommodations Clause, which fails as outlined above. For that reason, the Publication Clause claim adds nothing to the analysis.

### D.     Plaintiff's freedom of association claim also fails

As just explained, plaintiff has not alleged a viable free speech claim because the Virginia Values Act does not regulate *his* speech, nor does it compel him to adopt any specific message as his own. Plaintiff's association-based claim suffers from the same flaw: Nothing about the Act forces plaintiff to associate with anyone, much less in an expressive way.

The right to expressive association is rooted in "collective effort on behalf of shared goals" and the "right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Jaycees*, 468 U.S. at 622. The First Amendment "extend[s]" to that context because "[t]he right to speak is often exercised most effectively by combining one's voice with the voices of others." *FAIR*, 547 U.S. at 68. "[T]o come within [the] ambit" of expressive association, therefore, "a *group* must engage in some form of expression." *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) (emphasis added).

This constitutional protection simply has no application to plaintiff's commercial relationship with his paying customers. By offering a service—documenting a wedding for a couple in exchange for money—plaintiff is no more "associating" with the couple or their guests than a bartender, a shuttle driver, or any other vendor. Nor is plaintiff conveying a recognizable message or "combining [his] voice" with anyone in pursuit of a particular goal. *FAIR*, 547 U.S. at 68; see *State v. Arlene's Flowers, Inc.*, 193 Wash. 2d 469, 533 (2019) ("[T]he Supreme Court has never held that a commercial enterprise, open to the general public, is an 'expressive association' for purposes of First Amendment protections." (quoting *Dale*, 530 U.S. at 648)). Similar to the recruiters in *FAIR*, plaintiff is an "outsider[]" who attends a couple's wedding "for the limited purpose of" taking photographs—"not to become members of the [couple]'s expressive association." *FAIR*, 547 U.S. at 69. Plaintiff may not invoke the First Amendment

13

"simply by asserting that mere association would impair [his] message," and his conclusory allegations to the contrary are not sufficient on a motion to dismiss. *Id.* at 69.

*     *     *

This is not the first time a litigant has "attempted to stretch a number of First Amendment doctrines well beyond the sort of activities these doctrines protect." *FAIR*, 547 U.S. at 70. The Supreme Court has already rejected that strategy, and plaintiff's claims fail for the same reason. "To the extent that the [Act] incidentally affects expression, [plaintiff's] effort to cast [himself] as just like the schoolchildren in *Barnette*, the parade organizers in *Hurley*, and the Boy Scouts in *Dale* plainly overstates the expressive nature of [his] activity and the impact of the [Act] on it, while exaggerating the reach of [the Supreme Court's] First Amendment precedents." *Id.* Plaintiff's free speech claim should therefore be dismissed.

## III.   Plaintiff's religious freedom claim fails as a matter of law

### A.   The Virginia Values Act is neutral and generally applicable

Plaintiff's contrary suggestions aside (see Pl.'s Reply 15–16; Pl.'s Resp. 27–28), the religious-freedom analysis adopted by the Supreme Court in *Employment Division v. Smith*, 494 U.S. 872 (1990), remains the law of the land. And, as *Smith* made clear, the free exercise of religion protected by the First Amendment does not extend so far as to "relieve an individual of the obligation to comply with a valid and neutral law of general applicability." *Id.* at 879. The Virginia Values Act is precisely such a law.[7]

1.    As previously noted, the text of the Virginia Values Act does not single anyone out for differential treatment. See page 6–7, *supra*. The Act's prohibition on discrimination

_____

[7] Plaintiff also urges this Court to recognize a religious-freedom theory that applies strict scrutiny because the Virginia Values Act is (alleged to be) "inconsistent with our nation's history and tradition." Pl.'s Resp. 27. Plaintiff concedes that such a theory would require "*Smith* [to be] overruled," which "this Court cannot do." *Id.* at 28.

applies equally to all businesses that "offer[] . . . goods[ or] services" to "the general public," Va. Code Ann. § 2.2-3904, and nowhere does the statute prescribe certain rules that apply only to religious conduct or individuals who adhere to certain beliefs. Plaintiff's suggestion that the Act "gives favorable treatment to secular speakers" depends entirely on his flawed argument that the law "forc[es] [him] to speak messages inconsistent with his religious beliefs," Pl.'s Resp. 26, which lacks merit for the reasons already discussed—including that such a theory would make every law viewpoint-based when applied to people who may disagree. See page 7–8, *supra*. And plaintiff's conclusory allegations that he "actively participates in the weddings he photographs" for the purposes of asserting a religious-freedom claim, see Compl. ¶ 108, are legal conclusions that should be disregarded under Rule 12(b)(6). See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers labels and conclusions . . . will not do."). Because the Virginia Values Act does not selectively "impose burdens only on conduct motivated by religious belief," it is generally applicable under *Smith* and its progeny. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 543 (1993).

  Plaintiff insists that a handful of exceptions across multiple different statutes undermine the general applicability of the Virginia Values Act. See Pl.'s Reply 18; see also Dkt. 6 (Pl.'s Mem.) 27–28. But none of those exceptions—either separately or together—amounts to broad carve-outs that show the General Assembly "decide[d] that the governmental interests" in prohibiting discrimination "are worthy of being pursued only against conduct with a religious motivation," as was the case with the severely "underinclusive" animal sacrifice law in *Lukumi*. 508 U.S. at 542–44. And the two specific exceptions on which plaintiff focuses—private clubs and age restrictions in the context of government programs, see Pl.'s Reply 18—do not in any

way differentiate between religious and secular conduct, much less suggest that the Act was designed to compel only certain people to violate their sincerely held religious beliefs.

2.     The Virginia Values Act is also "neutral" because its "object" is not to "restrict practices because of their religious motivation." *Lukumi*, 508 U.S. at 533. Again, the structure of the law is instructive on this point, as the Act, "by [its] own terms" does not "target" a particular "religious exercise"—all the law does is require *every* public accommodation to serve customers equally. *Id.* at 542.

Nor has plaintiff shown that the history of the Act "discloses animosity to [religious] adherents and their religious practices." *Lukumi*, 508 U.S. at 542. The statements by legislators on which plaintiff relies do not criticize or belittle any particular religion or sect, but instead focus on discrimination and bigotry more generally. See Compl. ¶ 247 ("if you are a public organization, your doors are supposed to be open to everyone in the public"); ¶ 248 (criticizing *all* forms of "bigotry," including "religious bigotry"). The only thing these statements show "hostility" toward is turning someone away because of who they are—whatever the motivation—which plaintiff expressly disavows as connected to his religious beliefs. Pl.'s Resp. 27; accord Pl.'s Reply 10 ("[plaintiff] *never* discriminates based on status"); Compl. 1 (plaintiff has "never declined to serve anyone because of who they are").

Plaintiff's reliance on *Masterpiece Cakeshop* in support of this point is equally misplaced for two related reasons. First, *Masterpiece Cakeshop* was not a pre-enforcement challenge. Instead, the plaintiff there challenged a completed enforcement action against his specific business, see 138 S. Ct. at 1723, and the statements that the Court found evidenced a "clear and impermissible hostility" toward religion came from the administrative proceeding in that plaintiff's own case before the state's Civil Rights Commission, *id.* at 1729. Here, by contrast,

the statements plaintiff cites are not hostile to religion in general or him in particular and they come from the broad legislative debate that took place as the General Assembly considered various proposals for amending Virginia's anti-discrimination laws. As already explained, plaintiff has no specific enforcement history on which to rely because the public accommodation provision has not been enforced against him or his business. See page 2, *supra*.

Second, *Masterpiece Cakeshop* squarely reaffirmed that States *may* constitutionally enact laws that ban discrimination against LGBT individuals in public accommodations. See 138 S. Ct. at 1728 (state law may "protect . . . classes of individuals," including "gay persons," in "acquiring whatever products and services they choose on the same terms and conditions as are offered to other members of the public"). And although "religious and philosophical objections to gay marriage" may be "protected views and in some instances protected forms of expression," the Court explained, "it is a general rule that such objections *do not allow* business owners and other actors in the economy and in society to deny protected persons equal access to goods and services under a neutral and generally applicable public accommodations law." *Id.* at 1727 (emphasis added). Because plaintiff's pre-enforcement challenge attacks just such a rule, *Masterpiece Cakeshop* weighs strongly in favor of upholding the Virginia Values Act.

### B.   Plaintiff's other theories are not cognizable

All of plaintiff's remaining religion-based theories also lack merit. As defendants have already explained, the "hybrid rights" claim plaintiff asserts has never been recognized in this circuit. See Defs.' Mem. 22–23. Plaintiff never disputes that point; instead he relies on out-of-circuit cases to urge the Court to break new ground here. See Pl.'s Reply 16. But plaintiff cites no case where any court has allowed a "hybrid rights" theory to proceed in the absence of a viable First Amendment claim standing alone. See *Telescope Media Grp. v. Lucero*, 936 F.3d 740, 760 (8th Cir. 2019) ("[I]t is not at all clear that the hybrid-rights doctrine will make any real

17

difference in the end."); *Cornerstone Bible Church v. City of Hastings*, 948 F.2d 464, 473 (8th Cir. 1991) (allowing consideration of "hybrid rights" claim in connection with viable free speech claim). Because plaintiff's First Amendment claims fail, see Parts II and III(A), *supra*, the complaint does not allege an independently viable "hybrid rights" theory.

Plaintiff invokes a similar "hybrid" theory in asserting that a judicial consensus has emerged in favor of overturning anti-discrimination laws like the Virginia Values Act. See Pl.'s Reply 1–2; Pl.'s Resp. 28. But plaintiff's claim that federal courts have "unanimously" or "uniformly" invalidated these laws based on religious objections is both inaccurate and incomplete. Pl.'s Reply 2, Pl.'s Resp. 28. In particular, plaintiff's argument does not account for *303 Creative LLC v. Elenis*, 385 F. Supp. 3d 1147 (D. Colo. 2019), where a federal court rejected free speech and free exercise challenges to Colorado's public accommodations law. See *id.* at 1150. It also completely ignores the two decisions by state high courts that decisively rejected the same arguments offered here. See *Arlene's Flowers, Inc.*, 193 Wash. 2d at 536; *Elane Photography*, 309 P.3d at 77. In any event, it goes without saying that the cases on which plaintiff relies—the vast majority of which engendered thorough and impassioned dissents—do not bind this Court.

## IV.     The Virginia Values Act satisfies strict scrutiny

Even if the Virginia Values Act implicated protected speech or religious exercise, the law would still pass constitutional muster. For the reasons defendants have already explained, the Act is "narrowly drawn to achieve" the "compelling state interest" in combatting discrimination in public accommodations. *Burson v. Freeman*, 504 U.S. 191, 198 (1992); see Defs.' Mem 23–25.

Other than rehashing prior arguments that lack merit for the reasons already explained, plaintiff offers only two responses. First, plaintiff quibbles with the level of specificity required to define a compelling government interest, arguing that the Commonwealth may not act to

prohibit discrimination generally but must instead root out inequality one situation at a time. See Pl.'s Reply 17 (identifying the relevant state interest as "wedding photographers discriminating and impeding access to photography in Virginia"). But the statute being challenged in this case is the Virginia Values Act, not the "LGBT Rights in Potentially Expressive Wedding-Related Services Act."[8] And, as the statutory text makes clear, the goal of the General Assembly in adopting this law was eradicating discrimination across many contexts, including employment and *all* places of public accommodation. See Va. Code Ann. § 2.2-3900 *et seq.* Plaintiff cites no authority for the proposition that courts hold legislatures to such granular exercises of their power to combat invidious discrimination. Accord *Jaycees*, 458 U.S. at 623 (upholding state statute based on "compelling interest in eradicating discrimination against its female citizens").

Plaintiff also criticizes the Commonwealth for not "tr[ying] other methods" to tailor the Act more narrowly. Pl.'s Reply 19. But the "alternatives" plaintiff offers up are not different *means* of achieving the same goal (rooting out all discrimination in public accommodations). Rather, they are a suggestion that Virginia should have identified certain contexts in which that goal will not be pursued and where forms of otherwise-unlawful discrimination will simply be permitted. See Pl.'s Mem. 29 (asserting that Virginia should "exempt individuals and small businesses that celebrate weddings"). Because such "a patchwork of exceptions for ostensibly justified discrimination" would "fatally undermine[]" the "broader societal purpose" of "eradicating barriers to the equal treatment of all citizens in the commercial marketplace," plaintiff's proposals are neither relevant nor necessary to a narrow-tailoring analysis. *Arlene's Flowers*, *Inc.*, 193 Wash. 2d at 531.

---

[8] Indeed, adopting a law as specific as plaintiff appears to demand could invite even fiercer criticism under the First Amendment that the law targeted for regulation certain individuals or views. Cf. Pl.'s Resp. 21 (objecting to "differential treatment"); *id.* at 25 (arguing that Act "selectively burden[s] religious speakers like [plaintiff]").

## CONCLUSION

The complaint should be dismissed in its entirety.

Dated: December 23, 2020

Respectfully submitted,

**MARK R. HERRING**
**R. THOMAS PAYNE, II**

By: _____*/s/ Jessica Merry Samuels*_____
    Jessica Merry Samuels (VSB No. 89537)
    *Assistant Solicitor General*

Mark R. Herring
  *Attorney General*

Erin B. Ashwell (VSB No. 79538)
  *Chief Deputy Attorney General*

Samuel T. Towell (VSB No. 71512)
  *Deputy Attorney General*

Toby J. Heytens (VSB No. 90788)
  *Solicitor General*

Martine E. Cicconi (VSB No. 94542)
Michelle S. Kallen (VSB No. 93286)
  *Deputy Solicitors General*

Kendall T. Burchard (VSB No. 95710)
  *John Marshall Fellow*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-6835 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us

**CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2020, I will electronically file the foregoing with

the Clerk of Court using the CM/ECF system, which will then send a notification of such filing

(NEF) to all counsel who have appeared.


By:    */s/ Jessica Merry Samuels*
Jessica Merry Samuels
*Assistant Solicitor General*
Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 786-6835 – Telephone
(804) 371-0200 – Facsimile
solicitorgeneral@oag.state.va.us