IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |
|---|---|
| ROBERT UPDEGROVE, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| ) | |
| v. ) | Civil Action No. 1:20-cv-1141 |
| ) | |
| ) | |
| MARK R. HERRING, ) | |
| *in his official capacity* ) | |
| *as Virginia Attorney General,* ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

On July 1, 2020, the Virginia General Assembly's update to the Virginia Human Rights Act went into effect. The update, named the Virginia Values Act ("VVA"), expanded protections for LGBTQ individuals accessing public accommodations. The VVA states, "It is an unlawful discriminatory practice for any person . . . to refuse, withhold from, or deny any individual . . . made available in any place of public accommodation . . . on the basis of . . . sexual orientation." Va. Code § 2.2-3904

(2020). The VVA does not only prevent the withholding of accommodations. Under the VVA it is also "an unlawful discriminatory practice for any person . . . to publish, circulate, issue, display, post, or mail . . . any communication, notice, or advertisement to the effect that any of the accommodations . . . shall be refused, withheld from, or denied to any individual on the basis of . . . sexual orientation[.]" Id. To summarize, the VVA makes two things unlawful: (1) to withhold a public accommodation on the basis of sexual orientation, and (2) to publish a statement saying that a public accommodation will be withheld on the basis of sexual orientation.

Under the VVA, any injured party can file a complaint with the Division of Human Rights of the Department of Law. Va. Code § 2.2-3907(A). The Division will then investigate. If it believes that unlawful discrimination has occurred, it can (upon the written request of the injured party) issue a "notice of the right to file a civil action." Va. Code § 2.2-3907(H). But this is not the statute's only enforcement mechanism. The Attorney General can bring civil actions on behalf of any injured party when he has reason to believe that the VVA has been violated. Va. Code § 2.2-3906. Anyone bringing a civil case can seek preventative relief, a civil fine of up to $50,000 for a first-

time violation, and "reasonable attorney fees and costs." Va. Code § 2.2-3906(B).

Plaintiff Robert Updegrove operates a photography business that provides photography services for anything from weddings to conservative political events. Plaintiff offers his services to the public, but he also uses his business to promote his own ideas and beliefs. One of the beliefs Plaintiff communicates through his photography is that marriage is intended to be between one man and one woman. Plaintiff uses his wedding photography as an opportunity to promote his own religious message about marriage, "that God designed marriage as a permanent institution that symbolically points people to Jesus' sacrificial death and covenantal relationship with His Church." Because of Plaintiff's beliefs about marriage, he will not offer wedding photography to marriages that he believes contradict his religious message. This includes same-sex marriages. Plaintiff offers his photography services to members of the LGBTQ community but will not photograph a same-sex wedding, regardless of the sexual orientation of the person who hires him.

In response to the VVA, Plaintiff asserts that he would like to do four things. First, Plaintiff would like to decline photography services to any client seeking wedding photography for a same-sex wedding ceremony. Second, Plaintiff would like to publish a statement on his business's website expressing his

3

"inability to celebrate same-sex weddings." Third, Plaintiff wants to adopt and publish an editorial policy that explains his views and his reasons for declining certain events. Fourth, Plaintiff wants to ask prospective clients if they plan to celebrate a same-sex wedding, or any other event that violates Plaintiff's beliefs. As of the date of filing the Complaint, Plaintiff did not have an editorial policy or statement of beliefs on his website and he had never been asked to photograph a same-sex wedding.

To proceed with a claim in federal court, plaintiffs must have standing to assert their claims. Standing requires that a plaintiff show an injury-in-fact that is fairly traceable to the defendant and capable of redress by a court. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). Without these elements, a case or controversy does not exist that allows for Article III jurisdiction. Id. When a plaintiff brings a pre-enforcement challenge to a statute, the plaintiff must prove injury-in-fact by showing a "substantial risk" of future harm. Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). Constitutional standing requirements have been "somewhat relaxed in First Amendment cases." Cooksey v. Futrell, 721 F.3d 226, 235 (4th Cir. 2013). "[A] plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but

4

proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" Susan B. Anthony List, 573 U.S. at 159 (quoting Babbitt v. Utd. Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979)).

Plaintiff desires to publish two statements sharing his views of marriage and giving reasons for his refusal to photograph same-sex weddings. He also desires to ask couples about the kind of wedding they would like to have and decline to photograph those weddings that contradict his statements. Plaintiff's desired actions arguably fall under the First Amendment because he is choosing how to express his own message using a creative medium. See Brown v. Entm't Merchants Ass'n, 413 U.S. 786, 790 (2011) (holding that the First Amendment protects mediums like "books, plays, and movies [that] communicate ideas"). Plaintiff's desired actions also arguably fall under the text of the VVA because Plaintiff operates a business that provides goods to the public, and the law could be interpreted to require Plaintiff to provide wedding photography for same-sex weddings.

When assessing a credible threat of prosecution, the Supreme Court looks at several factors: the history of past enforcement, who has the authority to file a complaint, and how often complaints are filed or threatened. See Susan B. Anthony List, 573 U.S. at 164-65. In Susan B. Anthony List v. Driehaus,

5

an Ohio statute criminalized making false statements during the course of a campaign for public office. Id. at 152. The statute allowed any person to file a criminal complaint, and members of the public regularly filed such complaints—around twenty to eighty of them each year. Id. at 154, 164. After the plaintiff posted an advertisement against a candidate for public office, the candidate filed a complaint with the state election agency in charge of enforcing the statute. Id. at 154. The candidate's complaint was eventually withdrawn, but the plaintiff still brought a pre-enforcement challenge to the law claiming that the threat of future enforcement chilled its constitutionally protected speech. Id. at 155. The Supreme Court held that the plaintiff had standing because the threat of enforcement was sufficiently credible to create a case or controversy. Id. at 156-57. The threat was sufficiently credible because the statute had been consistently enforced for many years (including past enforcements against the plaintiff), the likelihood of future enforcement was high because complaints could be brought by anyone, and many complaints were filed each year. Id. at 164-65.

In this case, the factors weigh against Plaintiff. Unlike in Susan B. Anthony List, the VVA has never been enforced against anyone. In the almost nine months since the statute became effective, no complaint has been filed under the statute. Plaintiff asserts that these facts carry less weight since

states will presumably enforce recently enacted statutes and past enforcement is not necessary to establish standing. See Mobil Oil Corp. v. Att'y Gen. of Va., 940 F.2d 73, 76 (4th Cir. 1991). Plaintiff is correct that past enforcement is not a necessary condition for standing. However, that does not mean that Plaintiff automatically has standing simply because his conduct arguably falls under the text of the statute. The lack of enforcement cuts against the idea that Plaintiff currently faces a credible threat that Virginia will enforce the VVA against him. Unlike other jurisdictions, Virginia has not "employed 'testers' to target noncompliant businesses" or pursued other successful actions against businesses like Plaintiff's. Telescope Media Group v. Lucero, 936 F.3d 740, 750 (8th Cir. 2019). Since enforcement has been non-existent to this point, the potential threat against Plaintiff is diminished.

Instead of looking at past enforcement, Plaintiff points to the promise of future enforcement, giving examples of instances when Defendant has refused to disavow enforcement of the law. These statements lend support to the argument that the statute is "non-moribund," but they do not decide the issue. See N.C. Right to Life, Inc. v. Bartlett, 168 F.3d 705, 710 (4th Cir. 1999). Even with the presumption that the statute will be enforced, Plaintiff has not demonstrated that he personally faces a threat of enforcement. Injury-in-fact must not be

7

"conjectural or hypothetical," but must be "actual or imminent." Susan B. Anthony List, 573 U.S. at 158 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). The Defendant's plan to enforce the statute *generally* does not mean that Plaintiff *specifically* faces an imminent threat of enforcement. Plaintiff's theory of standing would collapse the credible threat and arguable violation prongs into one. It is not sufficient that a plaintiff's conduct arguably violates an actively enforced statute; there must be a credible threat of prosecution as well. See Susan B. Anthony List, 573 U.S. at 159.

The VVA, like the Ohio statute in Susan B. Anthony List, allows for complaints to be filed by anyone, so the likelihood of enforcement is much greater. This factor weighs in Plaintiff's favor, but its impact is dulled because Plaintiff has never actually acted in a way that would arguably violate the statute. Plaintiff has never been approached by anyone seeking his photography services for a same-sex wedding. Plaintiff also has never published any statement reflecting his decision not to provide wedding photography for same-sex weddings. At the moment, Plaintiff has no reason to suspect that Defendant might attempt to penalize him using a statute he has never violated.

Even though he has not violated the statute, Plaintiff argues that he would have violated the statute if not for his

8

self-censorship. Plaintiff claims his speech has been chilled because he cannot publish his beliefs on his website or in his editorial policy without risking a civil fine. Several cases recognize that an "objectively reasonable chilling effect" can give a plaintiff standing. See Virginia v. Amer. Booksellers Ass'n, 484 U.S. 383, 393 (1988); Abbott v. Pastides, 900 F.3d 160, 176 (4th Cir. 2018); Cooksey v. Futrell, 721 F.3d 226, 235-37 (4th Cir. 2013). When the threat of criminal prosecution looms, many people self-censor and choose not to exercise their constitutional rights because the cost is too high. Courts have recognized that self-censoring can create standing when the perceived threat is reasonable. Compare Steffel v. Thompson, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."), with Younger v. Harris, 401 U.S. 37, 42 (1971) (holding that the plaintiffs' allegations of "feeling inhibited" were not sufficient to confer standing).

A plaintiff has standing when he ceases to engage in certain speech because an enforcement agent has said that the speech violates the law. See Cooksey, 721 F.3d at 236. The plaintiff in Cooksey ran a diet-advice website where he provided different recipes and responded to user questions through a

9

"Dear Abby-style" advice column. Id. The plaintiff operated this website for many months without issue. Id. The state agency responsible for dietetics licensing discovered the plaintiff's business and told the plaintiff that he had to eliminate several portions of his website or risk a misdemeanor charge. Id. at 231-32. Not wanting to take any chances, the plaintiff took down the questionable portions of his website and sued the agency claiming that the agency violated his First Amendment rights. Id. at 233. The Fourth Circuit held that the plaintiff had standing to seek an injunction because he stopped engaging in certain speech due to the unsolicited actions of the state agency. Id. at 237.

In this case, Plaintiff never previously engaged in the type of speech that he claims is currently being chilled. Unlike the plaintiff in Cooksey, who operated an advice column for multiple years before self-censoring, Plaintiff never posted a statement of his own view of marriage on his website and he never before crafted an editorial policy explaining his reasons for declining to photograph same-sex weddings. Nothing in the record shows that Plaintiff ever sought to engage in this type of speech prior to the passage of the VVA. However, now that the speech is arguably restricted, Plaintiff claims that he would like to post a statement which might violate that law. In other self-censorship cases, the plaintiffs ceased engaging in an

10

activity or speaking on a subject. See, e.g., Amer. Booksellers Ass'n, 484 U.S. at 392 (noting that the plaintiffs were forced to cease displaying books in a certain way); Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (stating that the plaintiffs had "actively engaged in consumer publicity campaigns in the past" and alleged "an intention to continue" those campaigns in the future); Steffel v. Thompson, 415 U.S. 452, 455-56 (1974) (noting that the plaintiff ceased distributing handbills after plaintiff's companion was arrested for that activity); N.C. Right to Life, Inc., 168 F.3d at 709 (noting that the plaintiff ceased distributing handbills after a threat of enforcement); see cf. Mobil Oil Corp., 940 F.2d at 76 (bringing suit to avoid making costly changes to existing franchise contracts that were affected by a new law).

Plaintiff in this case never ceased any protected activity because he never started. If Plaintiff can now allege that his speech has been chilled because he cannot say something that he has never said before, then anyone has standing to challenge any statute simply by alleging that they would like to make a future statement that the statute arguably prohibits. Cases and controversies require more than just hypothetical future activity. Susan B. Anthony List, 573 U.S. at 158 (quoting Defenders of Wildlife, 504 U.S. at 560).

11

Other cases differ from the present case in another important aspect, most pre-enforcement challenges have generally been available to plaintiffs because their only alternative is to risk criminal prosecution by violating the law. Amer. Booksellers Ass'n, 484 U.S. at 392. In American Booksellers Association, Virginia passed a law requiring booksellers to keep books away from juveniles that could be "harmful" to them. Id. at 387. Virginia booksellers brought a pre-enforcement challenge to the law claiming that they had standing because they were left with no choice but to either undertake costly compliance measures or engage in criminal activity. Id. at 392. The Supreme Court agreed with the plaintiff, explaining that self-censorship is the primary First Amendment harm that comes from potential criminal penalties. Id. at 393.

Here, Plaintiff does not face the risk of criminal prosecution. The potential fine for violations of the VVA is up to $50,000. This is not a trivial sum. However, Plaintiff does not face imprisonment or the long-term penalty of a criminal record. Unlike other chilled speech cases, and unlike the similar case decided by the Eighth Circuit, Plaintiff cannot be criminally prosecuted for violating the VVA. Va. Code § 2.2-3906(B); see also Telescope Media Group, 936 F.3d at 750. Whether a statute falls under the criminal or civil code is not decisive, but the absence of criminal penalties decreases the

severity of potential violations, which in turn decreases the potential chilling effect of the statute. In almost every case where standing was found based on a chilling effect, the plaintiff faced the threat of criminal penalty. See, e.g., Susan B. Anthony List, 573 U.S. at 151; Holder v. Humanitarian Law Project, 561 U.S. 1, 15 (2010); Amer. Booksellers Ass'n, 484 U.S. at 387; Steffel, 415 U.S. at 455-56 (1974); N.C. Right to Life, Inc., 168 F.3d at 709.

Plaintiff claims to be chilled by a potential civil fine that accompanies a law that has never been enforced against Plaintiff or any other person. Aspects of this case create "the odor of a case or controversy," but the scent is not strong enough to convince this Court that a case or controversy exists. Mobil Oil Corp., 940 F.2d at 77. No case or controversy exists when a person expresses a desire to change his previously compliant conduct to violate a new statute that no person, government or otherwise, has ever sought to enforce. Plaintiff must provide more before this Court may exercise jurisdiction.

For the forgoing reasons, this Court finds that Defendants' 12(b)(1) Motion to Dismiss should be granted. Plaintiff lacks standing to bring these claims. An appropriate order shall issue.

13

                                                  /s/ Claude M. Hilton
                                             CLAUDE M. HILTON
                                             UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
March 30, 2021